[Crim. No. 9982. First Dist., Div. Two. Sept. 20, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
GENE HENRY CAMPBELL, Defendant and Appellant.

## COUNSEL

Richard M. Sims III, under appointment by the Court of Appeal, and Penrod, Himelstein, Savinar & Sims for Defendant and Appellant.

Evelle J. Younger, Attorney General, Herbert L. Ashby, Chief Assistant Attorney General, William E. James, Assistant Attorney General, Eric Collins and Nancy S. Reller, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**TAYLOR, P. J.**—Defendant appeals from the judgment of conviction[1] entered on a jury verdict finding him guilty of armed assault with a hand gun (Pen. Code, § 245, subd. (a)). He contends that: 1) his statement should not have been admitted as it was the product of an illegal arrest, as well as in violation of his rights under *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974]; 2) the prosecution was guilty of prejudicial misconduct in failing to indicate the existence of his oral unrecorded statement, pursuant to the informal discovery procedures prior to trial; and 3) the evidence that he was armed with a knife prior to the offense was prejudicial.

Viewing the record most strongly in favor of the judgment and verdict, as we must, the following facts appear: About 11:30 a.m. on January 5, 1971, Mr. Greenwood, one of the security officers at Richmond High

---

[1]The notice of appeal states that the appeal is also taken from the sentence. As there is no separate appeal from a sentence, the purported appeal must be dismissed.

School, was summoned by a student, Miss Anderson, who had been grabbed by defendant. Defendant had a knife in his hand and asked Greenwood if he was armed; on receiving an affirmative reply, defendant left at Greenwood's request, after cursing at him. Defendant went across the street to the corner of 23d and Wilcox.

About 10-15 minutes later, Greenwood noticed that a crowd of students had gathered on this corner to watch the beating of an old man. Greenwood mentioned the fight to the school's other security officer, Mr. Frazier. Frazier went to his patrol car to radio the police, while Greenwood crossed the street. As his approach was noted, the crowd parted and Greenwood saw defendant hitting the elderly victim who was up against a wall, but he did not see a weapon. Kerry Reeves, another student, jumped on defendant's back and tried to pull him away.

After taking the victim into the school for first aid, Greenwood flagged down Officer Johnson of the Richmond Police Department and pointed out defendant, who was running down a nearby street with one Evans, a former student. Defendant and Evans appeared to exchange something. Johnson pulled up in front of defendant, chased him, and arrested him with the help of Frazier, who had arrived in his car, just in time to cut off defendant's escape route down a driveway. Defendant was searched but no knife or other weapon was found.

Officer Johnson transported defendant to the San Pablo Police Department and remained with him in the booking area. Johnson was not the booking officer. Defendant, who had not been given any *Miranda* warnings or interrogated, asked Johnson what the charge was. When Johnson replied: "Possibly for a battery," defendant said: "I hit him, sure I hit him. What would you do if he called you a nigger?" This statement was admitted over several defense objections, after the court ruled that the prosecution had not deliberately failed to produce it pursuant to an order for discovery.

The 68-year-old victim, Mr. Hopson, stated that he was walking past a group of Negroes across the street from the high school. One of them grabbed him and wanted to know if Hopson had any money. When Hopson replied that he did not, his assailant said: "I think you have," and pulled out an object resembling a gun. Hopson was then hit in the face with the object and knocked to the ground. Hopson was dazed and could not remember how often he had been hit or whether by one person or several. He gave a description of his assailant, but could not identify defendant. Hopson was hospitalized for eight days. He sustained lacerations of the forehead, nose, upper lip and nasal arch, a slight deviation of the nasal septum, con-

tusions and swelling around the mouth, a nasal fracture and a rib fracture. The doctor was of the opinion that the lacerations and contusions were caused by a flat or blunt instrument and were inconsistent with having been administered by a knife or other cutting instrument.

Miss Anderson testified that about 11:30 a.m., defendant, while standing on the corner across the street from the school, pointed a shiny white-handled gun in the air and shot two or three times. After defendant had crossed the street, she saw him eating something with a knife. When he grabbed her, she saw that he had a knife with a 4-inch blade exposed.

Miss Hines and Miss Penn, two friends of Miss Anderson, also saw defendant firing the gun into the air, across the street from the school. Thereafter, defendant sat on the ground eating fruit cocktail with a knife. Miss Penn walked into the school after defendant wiped his knife on her leg. Miss Hines and Miss Penn witnessed the incident between defendant and Miss Anderson and saw Greenwood tell defendant to leave. Miss Hines did not see a weapon in defendant's hand but Miss Penn noticed that defendant had in his hand the same knife with a 4-inch blade that he had used to eat the fruit cocktail and wiped on her leg.

Two days later, Kerry Reeves told Sergeant Morris of the San Pablo Police Department that defendant had been fighting with an old man. Reeves' half-brother, Melvin Mason, pulled defendant away. In March 1971, Reeves repeated these facts to an investigator for the district attorney. At this time, Reeves also mentioned that defendant had threatened him while they were in jail together. At the trial, Reeves denied seeing defendant hit the victim and that Melvin Mason pulled defendant away from the victim. Reeves, however, admitted that he told the police officer that he had seen these events and had been threatened by defendant.

Defendant admitted the gun-firing incident at about 12 noon on January 5, but stated he immediately returned the gun to the owner, whom he did not know. He also admitted that he grabbed Miss Anderson and opened his knife. He denied any participation in the beating and stated he had previously disposed of the knife. He denied making any statement to Officer Johnson, but admitted the threat to Reeves.

 Defendant first contends that his statement to Officer Johnson was improperly admitted as it was the product of an unlawful arrest. He argues that Officer Johnson had no reasonable probable cause for the arrest. The record, however, indicates that defendant committed a public offense in the presence of Greenwood, a private citizen. A private person may arrest another for "a public offense committed or attempted in his presence"

(Pen. Code, § 837). The term "public offense" includes misdemeanors (Pen. Code, §§ 15, 17; *Burks* v. *United States,* 287 F.2d 117; *People* v. *Sjosten,* 262 Cal.App.2d 539, 543 [68 Cal.Rptr. 832]) and the person making the arrest may summon others to aid him in the arrest (Pen. Code, § 839). ▪ Although there was evidence that Greenwood himself took defendant into custody, Greenwood also had the right to delegate "the physical act of taking an offender into custody" to the other persons summoned, Officer Johnson and Mr. Frazier *(People* v. *Sjosten, supra,* p. 544; *People* v. *Wolfgang,* 192 Cal. 754 [221 P. 907]). Nor under the circumstances of immediate pursuit was Greenwood required to tell defendant that he was under arrest (Pen. Code, § 841; *People* v. *Harris,* 256 Cal.App.2d 455, 459 [63 Cal.Rptr. 849]). We conclude that defendant was legally arrested by Greenwood with the aid of Officers Johnson and Frazier.

▪ Defendant's next contention that his statement to Officer Johnson was obtained in violation of his rights under *Miranda* v. *Arizona, supra,* is likewise without merit. The record indicates that defendant volunteered the statement after Officer Johnson replied to his question concerning the charge. Such voluntary statements by a defendant, even though made before he has been given a warning and while in custody, are admissible in evidence *(People* v. *Neustice,* 24 Cal.App.3d 178, 187 [100 Cal.Rptr. 783]; *People* v. *Randall,* 1 Cal.3d 948, 955-956, fn. 7 [83 Cal.Rptr. 658, 464 P.2d 114]).

▪ Defendant's second major contention is that his oral unrecorded statement to Officer Johnson should have been excluded as it was not produced by the People pursuant to the informal discovery procedures prior to trial. The record indicates that Officer Johnson made no notes or reports of the statement. Johnson's name was furnished to defendant as a prospective witness but the record does not disclose whether defense counsel (the public defender) exercised the right to interview Johnson and ascertain his testimony *(Walker* v. *Superior Court,* 155 Cal.App.2d 134, 139 [317 P.2d 130]).

The record also indicates that about two months before the commencement of trial, the public defender forwarded to the district attorney a form requesting pretrial discovery that sought all of defendant's statements. The form is used by the two county offices involved rather than the formal discovery procedures, as it saves the taxpayers both time and money. Defendant's trial counsel was appointed about a week before the trial commenced[2]

---

[2]Private counsel was appointed to represent defendant after the public defender filed an affidavit of conflict.

and met with the district attorney, who provided various written reports. None of the written reports mentioned the fact of defendant's statement to Officer Johnson. Although the district attorney had knowledge of the statement about a month before trial, he did not mention it to defendant's trial counsel.

The trial court, noting that the statement had never been put into writing and that there was no formal discovery order, ruled that since there was no deliberate failure to disclose pursuant to an order, the statement was admissible.[3] This approach begs the question as the defense could not have obtained a specific order for discovery without knowing of the existence of defendant's oral statement to Officer Johnson.

Under our formal discovery procedures, defendant can compel the prosecution to produce defendant's written statements (*Powell* v. *Superior Court*, 48 Cal.2d 704, 707 [312 P.2d 698]), original recordings of his statements (*Vance* v. *Superior Court*, 51 Cal.2d 92 [330 P.2d 773]), and transcripts of his tape-recorded statements (*Cash* v. *Superior Court*, 53 Cal.2d 72, 73 [346 P.2d 407]; *McAllister* v. *Superior Court*, 165 Cal.App. 2d 297 [331 P.2d 654]). Whether there is a duty by the prosecution to disclose the existence of a defendant's *unrecorded* oral statement, pursuant to the informal discovery procedures here involved, is squarely presented in this case. Defendant cites *In re Ferguson*, 5 Cal.3d 525 [96 Cal.Rptr. 594, 487 P.2d 1234]. *Ferguson*, however, is distinguishable as it involved the suppression of evidence favorable to the defense, which is tantamount to the denial of a fair trial (*Brady* v. *Maryland*, 373 U.S. 83, 87 [10 L.Ed.2d 215, 218, 83 S.Ct. 1194]).

*People* v. *Superior Court*, 264 Cal.App.2d 694 [70 Cal.Rptr. 480], is more nearly in point, even though there, the defendant's oral statements were in the police report (*People* v. *Superior Court, supra*, p. 699, fn. 1). The district attorney of Shasta County sought a writ to annul an order of the superior court that remanded the case to the justice court to reopen and continue the preliminary hearing. At the original preliminary hearing, the justice court stopped defense counsel from examining a deputy sheriff about statements made to him by the defendants. The appellate court held that the superior court judge erred in ordering the preliminary hearing reopened and noted that the hearing should not be broadened in scope to

---

[3]"I will say this, Mr. Oda, that I feel that your office has been derelict in this, and you recognize this yourself; that the defendant should have been advised, that is his counsel should have been advised of the statements that you hoped to elicit from Officer Johnson because it does affect, certainly, his procedures. But I cannot on the basis of this record find that there was any deliberate failure to disclose under an order of such disclosure, and therefore I do not feel it should be excluded on that grounds."

serve a discovery function. In that case, however, Justice Bray noted at page 699: "Prior to trial a defendant is entitled to obtain written statements made by him to police officers (*Powell* v. *Superior Court*, 48 Cal.2d 704, 707-708 [312 P.2d 698]), also tape recordings of his statements to them. (*Vance* v. *Superior Court*, 51 Cal.2d 92, 93 [330 P.2d 773].) *Obviously, the same rule applies to oral statements made to the police. On request, it is the duty of the law enforcement officers to make such statements available to defendant.*" (Italics supplied.)

The Federal Rules of Criminal Procedure provide for formal discovery of "written or recorded statements or confessions made by the defendant. . . ." (18 U.S.C.A., rule 16 (a)(1)). The Preliminary Draft of a Proposed Amendment to rule 16, issued in January 1970, added a provision for the discovery of *"The substance of any oral statements. . . ."*[4] The notes of the advisory committee indicate that the proposed amendment was intended to compel disclosure "of a summary of any oral statements. . . ."

New York has long held that oral statements are not discoverable (*People* v. *Cusano* (1960) 63 Misc.2d 906 [313 N.Y.S.2d 833, 835]). In *People* v. *Riley* (1965) 46 Misc.2d 221 [258 N.Y.S.2d 932], the court explained the New York rule as follows, at page 934: "Where a defendant has allegedly made an oral admission, whether or not a police officer has made a note thereof or given the substance or content thereof in some paper for the use of the District Attorney, there is no 'copy' which can be furnished to defendant's counsel in advance of the testimony to be elicited at the hearing. Actually, an alleged oral admission has no legal existence except when and as testified to by the witness. Notes or memoranda relating to an oral admission are not admissible in evidence and are not subject to inspection (People ex rel. Lemon v. Supreme Court of State of New York, 245 N.Y. 24, 156 N.E. 84, 52 A.L.R. 200). In Lemon Chief Judge Cardozo clearly set forth the distinction (at pp. 28-29, 156 N.E. at p. 85): 'No precedent can be found even in civil causes for compelling disclosure, in advance of the trial, of the office notes or memoranda prepared by an attorney after consultation with his witnesses. . . . Nowhere has there been a suggestion that the jurisdiction can properly be extended to notes or memoranda in the possession of the prosecutor, but inadmissible as evidence either for prosecution or for defense.' "

---

[4]Similarly, the American Bar Association Standards Relating to Discovery and Procedure Before Trial (approved draft 1970) section 2.1, subdivision (a), subsections (i) and (ii), provides for the disclosure of "the substance of any oral statements made by the accused. . . ." The commentary (at pp. 61-62) indicates that the term "statements" should be "given a broad meaning so as to include generally any utterances of the statement-giver which are recorded by any means in whole or in part. . . ."

Maryland, on the other hand, under similar facts, requires the prosecution to make a report of the substance of the defendant's oral statement available, pursuant to procedural rule 728[5] (*Johnson* v. *State,* 232 Md. 199 [192 A.2d 506, 511]). The main objectives of rule 728 are to assist the defendant in preparing his defense, and to protect him from surprise (*Mayson* v. *State,* 238 Md. 283 [208 A.2d 599]).

California, like Maryland, has taken the more liberal view of the objectives of criminal discovery. Recently, our Supreme Court noted in *Joe Z.* v. *Superior Court,* 3 Cal.3d 797 [91 Cal.Rptr. 594, 478 P.2d 26], that pretrial discovery of statements was important, not alone to refresh the recollection of the defendant. The court stated at page 803: "First of all, due to the obvious incriminatory effect of a confession or admission, it becomes 'uniquely important' that defense counsel be permitted to inspect and copy the statement to assist him in determining its voluntary character and its admissibility. (Moore, *Criminal Discovery,* 19 Hastings L.J. 865, 882; see Note, *Developments in the Law—Discovery,* 74 Harv.L.Rev. 940, 1055.) In addition, counsel will need to know the precise words used by defendant in his statement in order to determine its probable impact upon the trier of fact, its relevance to the penalty or sentencing phase of the proceedings, its completeness and accuracy, and its possible prejudicial effect. (See Moore, *supra,* 19 Hastings L.J. 865, 883, fn. 103; Fletcher, *Pretrial Discovery in Criminal Cases,* 12 Stan.L.Rev. 293, 306-307.)

"Pretrial inspection affords the defendant an opportunity to clarify and correct ambiguities or errors in transcription, and provides his counsel with information which might lead to the discovery of other evidence important to the defense. (See, Note, *supra,* 74 Harv.L.Rev. 940, 1055; *United States* v. *Padrone* (2d Cir. 1969) 406 F.2d 560; *United States* v. *Bailey* (D.Kan. 1967) 262 F.Supp. 331, 332.)"

We cannot agree with the People's contention that only those statements of a defendant, known to the prosecution, that have been reduced to writing or other tangible form, in whole or in part, should be· subject to discovery. "Absent some governmental requirement that information be kept con-

---

[5]Rule 728 of the Maryland Rule of Procedure provides that upon motion of a defendant and upon a showing that the items sought may be material to the preparation of his defense and that the request is reasonable, the court, at any time after indictment, may order the state's attorney to produce, for inspection by the defense, designated books, papers, documents, or tangible objects obtained from or belonging to the defendant or obtained from others by seizure or by process, and to furnish the defendant the substance of any oral statements made by him which the state proposes to produce as evidence to prove its case in chief, a copy of any written statement made by him and the substance of any oral confession made by him (7 A.L.R.3d 83, § 11[e]).

fidential for the purposes of effective law enforcement, the state has no interest in denying the accused access to *all evidence* that can throw light on issues in the case . . ." (italics added; *People* v. *Riser,* 47 Cal.2d 566, 586 [305 P.2d 1]).

Nor does the informal discovery procedure here used by two public agencies to save the taxpayers money excuse the prosecution's failure to disclose defendant's statement, of which it had knowledge at least a month before trial. To deny informal discovery of a defendant's oral statements known to the prosecution " '. . . partakes of the nature of a game, rather than judicial procedure' " (*State* v. *Tippett,* 317 Mo. 319 [296 S.W. 132], quoted in *Powell* v. *Superior Court, supra,* p. 709). It is far better to have all evidence out in the open since the state ". . . has no interest in convicting on the testimony of witnesses who have not been as rigorously cross-examined and as thoroughly impeached as the evidence permits" (*People* v. *Riser, supra,* p. 586).

■ To carry out the intent and purpose of our criminal discovery procedures, we hold, in line with Justice Bray's conclusion in *People* v. *Superior Court, supra,* that whenever any oral statement has been made by a defendant and the fact is known to the prosecution, such statement is the proper subject of discovery, whether formal or informal procedures are used. To hold otherwise would have the additional undesirable effect of encouraging the police to purposely fail to record defendants' statements or to include any reference to them in their records and could result in less reliable police testimony. ■ We conclude, therefore, that here, the prosecution was required to inform the defense of defendant's oral statement to Officer Johnson.

We agree with the trial court that the prosecution was not guilty of misconduct as the law on the matter was not clear. Furthermore, we hold that even though the admission of the statement was error, it was not prejudicial in view of the additional overwhelming evidence against defendant. ■ The applicable standard set forth in *People* v. *Watson,* 46 Cal.2d 818 [299 P.2d 243], is whether there is a reasonable probability that a result more favorable to defendant would have been reached if the statement had been excluded.

■ Defendant contends that the court erred in admitting, over objection, the testimony of Greenwood and the three high school girls concerning defendant's possession of a knife on the school grounds, a short time before the alleged assault on Hopson across the street. Defendant argues that all of the evidence indicated that the alleged assault was carried out by a gun or other blunt instrument; that, late in the trial, the court granted the

prosecution's motion to amend the information from an allegation of a knife to that of a gun; and that the irrelevant testimony concerning defendant's possession of a knife was highly prejudicial. Defendant concedes that he himself testified to the *possession of the knife* on the school grounds but only as a trial tactic after the court had refused to exclude such evidence on the ground of relevancy.

It can be argued that the testimony concerning the knife was admissible as properly within the total immediate circumstances surrounding the commission of the alleged offense. However, assuming without conceding that, in view of the testimony concerning the assault and the subsequent amendment of the information, the testimony on the knife was irrelevant, it could not be prejudicial in this case. All three of the girls testified that defendant was brandishing a gun as well as a small knife and actually fired the gun on several occasions. Furthermore, defendant not only testified to the possession of the knife but also admitted the gun-shooting incidents at the trial.

Under these circumstances, we repeat, there could be no significant prejudice. We think it clear, in view of the overwhelming testimony of guilt, that error, if any, committed in admitting the testimony concerning the knife and the improper admission of defendant's unrecorded statement to the police, did not affect the outcome of the trial. It is not reasonably possible that the exclusion of these matters could have resulted in a more favorable verdict. (*People* v. *Watson, supra*; *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]).

The judgment of conviction is affirmed and the purported appeal from the sentence is dismissed.

Kane, J., and Rouse, J., concurred.

A petition for a rehearing was denied October 11, 1972, and appellant's petition for a hearing by the Supreme Court was denied November 15, 1972.