[L.A. No. 30722. Jan. 20, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
THE MUNICIPAL COURT FOR THE PASADENA JUDICIAL
DISTRICT OF LOS ANGELES COUNTY,
Defendant and Respondent;
DONALD GENE RUNYAN, Real Party in Interest and Respondent.

524.

**COUNSEL**

Byron B. Gentry, City Prosecutor, and Martin H. Wegman, Deputy City Prosecutor, for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, David R. Chaffee, Frederick R. Millar, Jr., Sandy Kreigler and Juliet H. Swoboda, Deputy Attorneys General, John K. Van de Kamp, District Attorney (Los Angeles), Harry B. Sondheim and Roderick W. Leonard, Deputy District Attorneys, Burt Pines, City Attorney (Los Angeles) and Mark Rosenbaum, Deputy City Attorney, as Amici Curiae on behalf of Plaintiff and Appellant.

No appearance for Defendant and Respondent.

Lewis R. Titus, Jr., Horn & Hoppe and Michael J. Hoppe, Jr., for Real Party in Interest and Respondent.

---

## OPINION

**RICHARDSON, J.**—In this case we inquire whether courts may permit a defendant in a criminal case to depose prosecution witnesses prior to trial, despite the defendant's failure to establish, as required by statute (Pen. Code, § 1335 et seq.), that the witnesses are about to leave the state or are unlikely to attend the trial. We conclude that although courts possess broad inherent powers to provide for discovery in criminal cases, they should decline to exercise those powers in a manner which would ignore present statutory limitations or which would create a different, more extensive deposition procedure than that presently prescribed by statute.

In 1975 a complaint was filed in municipal court charging real party, Donald Gene Runyan, with drunk driving (Veh. Code, § 23102, subd. (a)), obstructing a public officer (Pen. Code, § 148), and vandalism (Pen. Code, § 594, subd. (a)). Shortly after the complaint was filed, real party's counsel filed a pretrial discovery motion seeking, among other things, to depose the police officers involved in the various charges. (Real party evidently intends to assert police brutality and falsification of evidence as defenses to these charges.)

Real party's motion was granted by the municipal court, despite objection by the People to the effect that the statutory conditions for invoking deposition procedure had not been met. The People thereupon unsuccessfully sought a writ of prohibition in superior court. The People

have appealed denial of the writ. (See Code Civ. Proc., § 904.1, subd. (a); *Burrus* v. *Municipal Court* (1973) 36 Cal.App.3d 233, 235, 238 [111 Cal.Rptr. 539].)

There is statutory authorization for the "conditional examination" of witnesses in criminal cases. Penal Code section 1336 provides that "When a material witness for the defendant, or for the people, is about to leave the state, or is so sick or infirm as to afford reasonable grounds for apprehension that he will be unable to attend the trial, the defendant or the people may apply for an order that the witness be examined conditionally." Sections 1337 through 1345 describe the procedures for deposing such witnesses. Significantly, no provision is made for deposing witnesses who are not encompassed within the category of persons described in section 1336. On the contrary, section 1341 expressly provides that, "If, . . . the witness is not about to leave the state, or is not sick or infirm, . . . the examination cannot take place." It is not disputed that real party's application herein did not contain the requisite statutory allegations.

 There are two aspects to real party's primary argument. The courts possess an inherent power to issue discovery orders in criminal cases. They may exercise that power to order the taking of depositions of material witnesses even though defendant has failed to comply with those mandates of the Penal Code described above. We agree with real party's first premise, but reject the second, concluding that these powers may not be exercised in a manner which conflicts with express statutory provisions.

In *Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305], we recently expressed a controlling principle: "Unlike the statutory development of civil discovery in California, the right of an accused to seek discovery in the course of preparing his defense to a criminal prosecution is a *judicially* created doctrine evolving in the absence of guiding *legislation.* [Citations.] A defendant's motion to discover is addressed solely to the sound discretion of the trial court, which has inherent power to order discovery when the interests of justice so demand. [Citations.]" (Italics added.) *Pitchess* expressly recognized that legislative silence on the subject of discovery "means that it has left to the courts the adaptation of common law concepts." (P. 536, summarizing with approval a similar statement by Chief Justice Traynor in *Shively* v. *Stewart* (1966) 65 Cal.2d 475, 479 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431].) We stated the same principle in *Hill* v. *Superior*

*Court* (1974) 10 Cal.3d 812, 816 footnote 3 [112 Cal.Rptr. 257, 518 P.2d 1353]: "This court has developed rules of criminal discovery *in the absence of legislation.* [Citations.]" (Italics added.)

The exercise of a judicial power over criminal discovery which inheres in courts when the Legislature is silent must be tempered and restrained when the Legislature has spoken. In the matter before us the Legislature, pursuant to a constitutional grant, has expressed itself on the subject of depositions in criminal cases and has plainly declined to extend deposition procedures beyond those present confines carefully described in Penal Code section 1336. Accordingly, as will appear, we conclude that it would be inappropriate to exercise our inherent powers in conflict with existing legislation. ■ As we have previously insisted, "[T]he courts should only exercise those common law powers which are not otherwise repugnant to or inconsistent with our Constitution and statutes; *inherent powers should never be exercised in such a manner as to nullify existing legislation or frustrate legitimate legislative policy.*" (*Ferguson* v. *Keays* (1971) 4 Cal.3d 649, 654 [94 Cal.Rptr. 398, 484 P.2d 70], italics added; see *Martin* v. *Superior Court* (1917) 176 Cal. 289, 296-297 [168 P. 135].)

An examination of the constitutional foundations of the criminal discovery rules reveals that before 1974, article I, section 13, of the California Constitution provided in pertinent part that: "The Legislature also shall have power to provide for the taking, in the presence of the party accused and his counsel, of depositions of witnesses in criminal cases, other than cases of homicide *where there is reason to believe that the witness, from inability or other cause, will not attend at the trial.*" (Italics added.) By reason of the foregoing language of section 13, the state Constitution itself "seem[ed] to qualify the right to depositions in criminal cases . . . ." (*Clark* v. *Superior Court* (1961) 190 Cal.App.2d 739, 741 [12 Cal.Rptr. 191].)

In *Clark,* the court held that a defendant in a criminal case has no right to take the depositions of witnesses except in the limited situations permitted by the Constitution and statutes. The court further observed that the only relevant cases from other states had denied the right to take such depositions, and that "It is significant that the Legislature, over the years, has seen fit to provide for the taking of depositions of prosecution witnesses in criminal cases only in the limited situations set forth in the before-mentioned code sections [Pen. Code, § 1335 et seq.]." (P. 741.)

The *Clark* court also found it "highly significant" that although the Legislature had liberalized civil discovery procedures in 1957, "it made no change in the statutes concerning depositions in criminal cases." (P. 742.)

*Clark* also emphasized several relevant considerations, noting that the prosecution has no right to depose the defendant or his witnesses, that "[T]he right to take depositions should be a mutual one," and that defendant has reasonable alternative means of discovery, such as interviewing prosecution witnesses. (Pp. 742-743.) It concluded that "If it is deemed advisable to change such a long-established procedure, such change should be made by the Legislature rather than by the courts, if for no other reason than that provision as to the manner of taking such depositions must be made. The defendant would be required necessarily to be present, and certainly a notary public's office or the office of the defendant's attorney (places in which depositions in civil cases may be taken) would hardly be fit places for the taking of the depositions of defendants in criminal cases, particularly defendants' then in a jail or penitentiary. Also protection would have to be provided against using the taking of a deposition as merely an excuse for a junket trip for a confined defendant." (P. 743.) Several Court of Appeal cases subsequent to *Clark* are in accord with its holding and with its underlying rationale. (See *People* v. *Bowen* (1971) 22 Cal.App.3d 267, 277-280 [99 Cal.Rptr. 498]; *Everett* v. *Gordon* (1968) 266 Cal.App.2d 667, 671 [72 Cal.Rptr. 379]; *People* v. *Oakley* (1967) 251 Cal.App.2d 520, 524 [59 Cal.Rptr. 478]; *People* v. *Mersino* (1965) 237 Cal.App.2d 265, 269 [46 Cal.Rptr. 821]; *Yannacone* v. *Municipal Court* (1963) 222 Cal.App.2d 72, 74-75 [34 Cal.Rptr. 838]; see generally Comment, *Depositions as a Means of Criminal Discovery,* 7 U.S.F. L.Rev. 245.)

■ It is argued, however, that a recent change in the applicable provision of the state Constitution evidences an expression of the people's will to permit courts to order depositions in criminal cases unrestricted by former constitutional limitations. In 1974, by constitutional amendment, former section 13 of article I (described above) was repealed and section 15 was adopted in the following form: "The Legislature may provide for the deposition of a witness in the presence of the defendant and the defendant's counsel." The effects of this new provision are to delete the former restriction against depositions in homicide cases and the requirement that the proposed witness must be deemed unable to attend trial.

It is readily apparent, however, that the new section 15 is not self-executing, and that it does not, by itself, afford criminal defendants additional discovery rights. Rather, section 15 merely authorizes *the Legislature* to make provision for depositions in criminal cases. As we have seen, the sole provisions adopted by the Legislature, thus far, on this subject are contained in the sections concerning the conditional examination of witnesses. (Pen. Code, § 1335 et seq.) Accordingly, we may assume that, at this juncture, the Legislature has, for reasons satisfying to itself, intended to restrict the availability of criminal deposition procedures to those situations specified in the Penal Code.

The dissent argues that neither the constitutional provision nor the legislative enactments were intended to foreclose the use of depositions for purposes of pretrial discovery in criminal cases. As we have noted above, we fully agree that as a general proposition courts possess inherent powers to develop rules of criminal discovery *in the absence of legislation* on the subject. Yet, as we also have explained, the Legislature has acted to limit the taking of pretrial depositions to those situations specifically described in Penal Code sections 1335 through 1345. Contrary to the contention of the dissent that these statutory provisions are "silent" on the subject of the use of depositions for pretrial discovery, section 1341 expressly and unmistakably provides that "the examination *cannot take place*" unless the statutory conditions (unavailability or illness of witness, etc.) are met. Were the courts to devise a procedure to allow the taking of a deposition of a witness despite his probable availability at trial, such procedure would flatly and *directly conflict* with section 1341.

█ Real party advances a procedural due process argument, urging that the availability of depositions is essential to any fair trial. He cites no cases holding that his claim has a constitutional foundation however, and indeed the law appears otherwise. As we noted in *Jones* v. *Superior Court* (1962) 58 Cal.2d 56 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.2d 1213], "Pretrial discovery in favor of defendants, . . . is not required by due process. [Citations.] Accordingly, when this court permitted discovery in advance of as well as at the trial [citations], it was not acting under constitutional compulsion but to promote the orderly ascertainment of the truth." (Pp. 59-60.) The appellate court in *People* v. *Bowen, supra,* 22 Cal.App.3d 267, more recently observed that "It generally has been recognized that [a] right to a deposition in criminal cases did not exist at common law, *nor is it a constitutional right.* In criminal cases, the right to a deposition is governed by the foregoing constitutional and statutory

provisions [Cal. Const., art. I, § 15, formerly § 13; Pen. Code, § 1335 et seq.]. [Citations.]" (P. 278, italics added.) Significantly, although legislative authority for deposition procedure is presently contained in section 15, the availability of depositions is not included in the list of fundamental rights specified in that same section.

The dissent herein urges that real party has made a compelling showing of need for pretrial discovery, because he has asserted a lapse of memory regarding the incident in question and needs to know the alleged facts regarding the charges against him. Such a showing of "need," however, could be satisfied by *any* assertedly innocent accused who denies his presence at the crime scene and, accordingly, requires pretrial depositions to inform him of the underlying facts. The circumstances of the present case not being particularly unusual, a similar claim of necessity could be made by anyone charged with offenses which allegedly he did not commit.

We note that an accused is not, of course, wholly without means of ascertaining the facts upon which a criminal charge is based. In felony cases, the preliminary examination or grand jury hearing transcripts will ordinarily provide a valuable source of pretrial information. In addition, police reports and witnesses' statements are readily discoverable upon a proper showing of need. (See *Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531, 537-538 [discovery of sheriff's records of prior brutality by deputies].) Furthermore, nothing ordinarily would prevent the accused from interviewing prosecution witnesses to ascertain their version of the events. (See *Clark* v. *Superior Court, supra,* 190 Cal.App.2d 739, 742-743; *People* v. *Lopez* (1963) 60 Cal.2d 223, 246-247 [32 Cal.Rptr. 424, 384 P.2d 16] [discovery of names of prosecution witnesses].)

There are many reasons why the Legislature may be reticent to extend deposition procedures in criminal cases notwithstanding a constitutional authorization: the existence of sufficient alternative means of achieving pretrial discovery; the factor of considerable state expense relating to the payment of witness and transcription fees, for the services of a magistrate (see Pen. Code, § 1339), counsel and security arrangements; substantial trial delays which might ensue, given the necessity for adequate notice of depositions, opportunity for objections and hearings, and difficulties in scheduling depositions which, under present law (Cal. Const., art. I, § 15; Pen. Code, § 1340) must be taken in defendant's presence if he so desires.

The ·Legislature has chosen to limit the availability of deposition procedures in criminal cases to those particular situations which it has specified. We do not speculate as to its reasons. It is enough for us to know that it has not chosen to do what constitutionally it may do. We decline to exercise our inherent powers to achieve a different result which would conflict with its legislation. (*Ferguson* v. *Keays, supra,* 4 Cal.3d 649, 654.)

Similar policy considerations involving the complexity and difficulty in balancing various competing factors moved us recently in *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45], to decline adoption of a "notice-of-alibi" discovery procedure. We observed that the issues involved "complex and closely balanced questions," the gravity of which counseled against the exercise of our rule-making power. (P. 837.) As we explained in Reynolds, "It is one thing for a court to prescribe judicial procedure *necessary* to protect some fundamental constitutional principle or to effectuate some specific constitutional guarantee of individual liberty. [Citations.] It is quite another thing for a court to design judicial procedures which are in no way required by higher law but which may seem to some socially desirable and perhaps may be *permitted*—at least to some extent—by our state and federal Constitutions." (Pp. 845-846, italics in original.)

We concluded in *Reynolds* that "This court has not been vested with formal, quasi-legislative, rule-making power, either by the California Constitution or the Legislature," and that "due regard for this court's function as constitutional adjudicator, and solicitude for this state's governmental scheme of shared legislative and judicial responsibility for the sound administration of justice, render it inappropriate for us to create by judicial decision a notice-of-alibi procedure for California courts." (*Id.,* pp. 849-850.) ▪▪▪ We reaffirm, within the present context, the wisdom of this principle of restraint,. concluding that it would be both improper and unwise for the California courts to exercise their inherent power over discovery matters to provide for depositions in situations not presently authorized by statute.

Indeed, a very recent case on this subject demonstrates and underscores the wisdom of the foregoing principle. In *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970, 977-978 [140 Cal.Rptr. 669, 568 P.2d 394], involving the use of videotaped depositions, we carefully explained that since the applicable legislation limits depositions to proceedings in "written"

form, any change in procedure authorizing videotaping should devolve from legislative, not judicial, action.

The judgment is reversed and the cause remanded to the superior court with directions to issue the peremptory writ.

Mosk, J., Clark, J., Manuel, J., and Sullivan, J.,* concurred.

**BIRD, C. J.**—I respectfully dissent.

This court must decide whether a trial court has abused its discretion by ordering discovery by deposition in a criminal case where the accused, having been knocked unconscious, is unable to remember any of the events surrounding his arrest, where nearly all of the evidence is in the exclusive possession of state agents, and where the accused suspects that some of the evidence against him may have been fabricated.

The majority opinion holds that it would be "inappropriate" to grant discovery in this factual setting because to do so would "conflict with existing legislation." (Majority opn., *ante,* p. 528.) However, an historical analysis of the pertinent section of the California State Constitution and a careful review of statutory law establish that there is no such conflict. The majority reaches its erroneous conclusion by confusing two separate kinds of depositions: depositions used for discovery purposes and depositions used to preserve testimony for trial.

I

As the majority recognizes, "courts possess broad inherent powers to provide for discovery in criminal cases . . . ." (Majority opn., *ante,* p. 526.) These powers exist "even in the absence of constitutional mandate or enabling legislation" (*Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834, 837 [117 Cal.Rptr. 437, 528 P.2d 45]), because they are among the "inherent power[s] of every court to develop rules of procedure aimed at facilitating the administration of criminal justice and promoting the orderly ascertainment of the truth." (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801-802 [91 Cal.Rptr. 594, 478 P.2d 26].)

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.

Since at least 1956 (*People* v. *Riser* (1956) 47 Cal.2d 566 [305 P.2d 1], cert. den., 353 U.S. 930 [1 L.Ed.2d 724, 77 S.Ct. 721], overruled on other grounds in *People* v. *Morse* (1964) 60 Cal.2d 631 [36 Cal.Rptr. 201, 388 P.2d 33, 12 A.L.R.3d 810]), this court has authorized the trial courts to exercise these powers to provide for discovery by an accused in a criminal case because of its belief in "the fundamental proposition that he [the accused] is entitled to a fair trial and an intelligent defense in light of all relevant and reasonably accessible information." (*Pitchess* v. *Superior Court* (1974) 11 Cal.3d 531, 535 [113 Cal.Rptr. 897, 522 P.2d 305].) The trial courts have been vested with "broad discretion" (*Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 626 [114 Cal.Rptr. 121, 522 P.2d 681]) in exercising these powers, so as to facilitate "the true purpose of a criminal trial, the ascertainment of the facts." (*Riser, supra,* 47 Cal.2d at p. 586.)

Consequently, this court has authorized a wide variety of pretrial discovery on behalf of an accused depending upon the facts of the particular case, including (1) a psychiatric examination of a complaining witness in a sex case (*Ballard* v. *Superior Court* (1966) 64 Cal.2d 159 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]); (2) a record of the prior felony convictions of a prosecution witness (*Hill* v. *Superior Court* (1974) 10 Cal.3d 812 [112 Cal.Rptr. 257, 518 P.2d 1353]); (3) internal disciplinary records of a police agency where an individual was accused of battery on a police officer (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d 531); (4) a pretrial lineup, where the identity of the perpetrator was a "material issue" in the case (*Evans* v. *Superior Court, supra,* 11 Cal.3d 617, 625); (5) extensive documentary and testimonial evidence from law enforcement officers where an accused raised a prima facie defense of discriminatory enforcement of the laws (*Murgia* v. *Municipal Court* (1975) 15 Cal.3d 286 [124 Cal.Rptr. 204, 540 P.2d 44]); and (6) a statistical summary of a sheriff's department's records over a 14-year period where an accused raised a prima facie defense of discriminatory enforcement of the laws (*Griffin* v. *Municipal Court, ante,* p. 300 [142 Cal.Rptr. 286, 571 P.2d 997]). In order to determine if the trial court here abused its broad discretion by ordering pretrial discovery by deposition of the officers involved in the accused's arrest, the facts of the present case must be considered in light of these well-established precedents.

On March 3, 1975, the City Prosecutor of Pasadena filed a complaint that charged real party in interest, Donald Gene Runyan, with the commission of three misdemeanors on March 2, 1975: Vehicle Code section 23102, subdivision (a) (driving under the influence of alcohol),

Penal Code section 148 (resisting, delaying or obstructing a peace officer in the performance of his duty), and Penal Code section 594, subdivision (a) (vandalism).

Defense counsel moved for pretrial discovery, seeking, in part, to depose the officers who arrested Runyan and who administered a breathalyzer test to him.[1] Runyan's counsel asserted that his client did not have sufficient information concerning the charges to prepare his defense. Consequently, depositions were "necessary so that the Defendant may learn the specific nature and facts of the charges made against him."

In support of the discovery request, defense counsel filed an affidavit alleging upon information and belief the following: as a result of a traffic collision on March 2, 1975, Runyan was thrown from his automobile and knocked unconscious. He remained unconscious until revived by paramedics who responded to the accident. As he was attempting to start his automobile, the Pasadena police arrived. Runyan was ordered from his car and, when he protested, was forcibly removed, causing him again to strike his head on the pavement. He was handcuffed and placed in a police vehicle without being informed of the reason for his arrest. When Runyan kicked at the police car, causing unspecified damage, several officers dragged him from the police vehicle and threw him against its side, producing further injuries. One officer became verbally abusive. When Runyan complained that the handcuffs placed on his wrists were too tight, an officer tightened them further. Runyan was taken to the police station and a breathalyzer test was given. The results of the test indicated a blood alcohol content of 0.23 percent.

The affidavit alleged further that defense counsel believed the breathalyzer test results were deliberately falsified by the officers in order to justify the arrest. He alleged (1) that "[t]here were no recorded objectives [sic] of intoxication, but merely opinion expressed in several areas of the [14-page police] report that Mr. Runyan must be intoxicated" and (2) that witnesses indicated that Runyan had consumed an amount of alcohol prior to the accident that was inconsistent with a blood alcohol level of 0.23 percent.

---

[1] Runyan also moved to discover other items (e.g., police reports, lab reports, prior complaints against the arresting officers). Discovery was granted as to these items, and the state does not now contest the validity of those orders.

At the hearing on the motion, Runyan testified that as a result of the head injury during the accident he was confused or could not remember subsequent events. The municipal court granted his motion to depose the officers based on the fact Runyan (1) had "suffered apparently substantial head injury . . . impairing his consciousness, and does not know what happened" and (2) was "not able to assist [his] lawyer here . . . because of [his] inability to know what happened and to communicate what happened to [his] lawyer . . . ."[2]

The prosecution sought review of the municipal court's order by filing a petition for writ of mandate in the superior court. The superior court denied the petition, finding that (1) Runyan "does not have sufficient memory of the facts leading to the criminal complaints against him so that he may properly cooperate and assist his Counsel in the preparation of an intelligent defense"; (2) the "Pasadena Police Officers who were present at the incident giving rise to the criminal complaints against [Runyan] do have the information and this information can only be elicited prior to trial through the use of depositions" and (3) the "information must be obtained prior to trial if Counsel for the defense is to properly prepare an intelligent defense to the charges." This appeal by the state followed.

In view of the specific findings by both the municipal and superior court judges, none of which are disputed by the state, it is impossible to conclude that the order for pretrial discovery by deposition was an abuse of the court's broad discretion in this area. Virtually all of the evidence on two of the charges (Pen. Code, §§ 148, 594, subd. (a)) and most of the

---

[2]The municipal court also gave the following reasons in support of its ruling: "I now think we have before us the reasons for the request, the reasons for the opposition and the reasons for the ruling, and as I say, I am most interested in where the case goes from here. Probably this case, because of particular injuries, may be an appropriate case for this order. I hope so. That is why I made it. If I didn't think so, I wouldn't make it, but I would be most interested in the attitude of any Appellate Court, particularly any members thereof who have been called upon to defend a case in a trial, knowing as all trial judges do, that while it is true that the defendant has been provided with arrest record report information, that the police officers are not limited to what they say in their reports and are entitled to recall and refresh their memory as to any facts, events or circumstances which they can recall happened, and *Mr. Runyan's particular situation would make it impossible for him to anticipate that or to inform his counsel concerning its possibility or to refute it at the trial,* and that is why I am allowing you this case because the information supplied which has been supplied in the best of faith is no way binding on the People. It does not limit them in any way. For that reason, I think that is an appropriate case." (Italics added.)

evidence on the remaining charge (Veh. Code, § 23102, subd. (a)) are in the exclusive possession of agents of the state and are inaccessible to the defense except through the use of depositions.[3] Some of the evidence to be used at trial is alleged to have been fabricated. This showing fully supported, if it did not compel,[4] the trial court's order.

## II

Nevertheless, the majority concludes the trial court's order is inconsistent with article I, section 15 (formerly art. I, § 13) of the California Constitution, which, it is claimed, " 'seem[s] to qualify the right to depositions in criminal cases . . . .' " (majority opn., *ante*, p. 528, quoting from *Clark* v. *Superior Court* (1961) 190 Cal.App.2d 739, 741 [12 Cal.Rptr. 191]). That conclusion is incorrect. Article I, section 15, was intended solely to authorize a limited exception to the right of an accused to confront witnesses at trial by providing a means of perpetuating the testimony of a prosecution witness who might otherwise be unavailable to testify at trial. Both the history and the wording of this section establish that it was not intended either to impact on the use of depositions as a means of pretrial discovery or to limit the right of an accused to a deposition.

---

[3]The delivery of the 14-page police report to defense counsel is inadequate to overcome the deficiencies. Not only is the prosecution generally entitled to elicit testimony from police officers beyond what is explicitly written in their reports (see fn. 2, *ante*; but see *People* v. *Campbell* (1972) 27 Cal.App.3d 849 [104 Cal.Rptr. 118]), but the report here apparently does not contain statements by all four of the officers involved, does not address the falsification of evidence questions, and does not indicate to Runyan the type of section 148 violation he allegedly committed.

[4]It is true that prior decisions by this court have held that California's general rules of discovery in criminal cases were not constitutionally compelled. (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59 [22 Cal.Rptr. 879, 372 P.2d 919]; but see *Reynolds, supra,* 12 Cal.3d at p. 846 (citing the landmark criminal discovery case, *People* v. *Riser, supra,* in support of the proposition that a court has inherent power "to prescribe judicial procedures *necessary* to protect some fundamental constitutional principle or to effectuate some specific constitutional guarantee of individual liberty." [Italics in original.]).)

However, the court in *Jones* also recognized that even absent established rules of discovery, there would arise occasions when a criminal accused would be "permitted discovery . . . when necessary to insure due process of law." (*Jones, supra,* 58 Cal.2d at p. 59.) (Accord *Reynolds, supra,* 12 Cal.3d at pp. 837-838; see also *Hill* v. *Superior Court* (1974) 10 Cal.3d 812, 820 [112 Cal.Rptr. 257, 518 P.2d 1353] (". . . the denial of [discovery of the prior felony convictions of the prosecution's witnesses] in some instances would not deprive an accused of a fair trial."); *Evans* v. *Superior Court* (1974) 11 Cal.3d 617, 625 [114 Cal.Rptr. 121, 522 P.2d 681] (". . . due process requires in an appropriate case that an accused . . . be afforded a pretrial lineup . . .").)

A. *As Enacted in 1879, Article I, Section 13, of the Constitution Was Intended Solely to Permit an Exception to the Right of an Accused to Confront Witnesses at Trial and Was Not Intended to Forbid the Use of Depositions in Other Contexts.*

When California's present Constitution was enacted in 1879, it contained a provision in article I, section 13, authorizing the Legislature to provide for depositions in criminal cases in certain situations: "The legislature shall have the power to provide for the taking, in the presence of the party accused and his counsel, of depositions of witnesses in criminal cases, other than cases of homicide, when there is reason to believe that the witness, from inability or other cause, will not attend at the trial."[5]

The purpose of this provision was to authorize the Legislature to carve out an exception to the general rule that in a criminal case the accused had a right to be confronted by the witnesses against him at trial. The provision was not intended to interfere with the use of depositions in any other context. Consider the debates of the Constitutional Convention of 1878-1879 on this section. According to one of the delegates to the convention, Judge Jones, "the object of [the provision] was to relieve witnesses from the very manifest hardship in cases where they are unable to furnish bail,[6] and who reside at some other place than where the charge is made." (Debates and Proceedings, Cal. Const. Convention 1878-1879, p. 1188.) According to another delegate, Judge Hager, "it is very important to take depositions . . . . The complaint is not so much that innocent men are convicted, as that the guilty escape punishment. Now, on the other side, when complaint is made against any person charged with crime, there is often delay, sometimes for weeks and months, and *when the period of trial comes,* the witnesses cannot be

---

[5]In its entirety, article I, section 13, read as follows when enacted: "In criminal prosecutions, in any Court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the Court to compel the attendance of witnesses in his behalf, and to appear and defend, in person and with counsel. No person shall be twice put in jeopardy for the same offense; nor be compelled, in any criminal case, to be a witness against himself; nor be deprived of life, liberty, or property without due process of law. The legislature shall have power to provide for the taking, in the presence of the party accused and his counsel, of depositions of witnesses in criminal cases, other than cases of homicide, when there is reason to believe that the witness, from inability or other cause, will not attend at the trial."

[6]According to another delegate, "when a crime is committed upon a stranger, as has been the practice in the past, he must either give bonds for his appearance as a witness against the accused, or else go to jail and stay there until the time of the trial." (Debates and Proceedings, Cal. Const. Convention 1878-1879, p. 1189.)

found. They are gone. They cannot be got. Sometimes they are spirited away, and the result is that they defeat the ends of justice. . . . I will state again that it is very necessary and essential in the administration of justice in large cities, that this privilege of taking depositions should be obtained; otherwise there will be a failure in the administration of justice in many cases, because *the witnesses cannot be had.*" (*Ibid.,* italics added.)

As originally proposed, the constitutional provision dealing with depositions did not contain the exception for homicide cases and did not provide that the deposition be taken "in the presence of the party accused and his counsel." In this form, the provision aroused considerable opposition, because, as Judge Jones stated, despite its "meritorious object, . . . we have to abandon one of the rights which has been heretofore so highly prized, the right of being confronted with their witnesses, and meeting their accusers face to face." (*Ibid.*) To meet this objection, Judge Hager proposed to add the restrictions currently in the statute. (*Ibid.*) "Now, I will ask my friend over there [Judge Jones] what can be the objection to taking the deposition of a witness in the presence of the party accused. . . . How can he suffer any wrong. He is confronted with the witness. He can cross-examine the witness; he can impeach him, *the same as if the testimony was taken in Court.*" (*Ibid.,* italics added.) As thus amended,[7] the provision passed.

It is clear that the purpose of the constitutional provision relating to depositions was intended solely to provide a means of perpetuating the testimony of a witness who might otherwise be unavailable to testify for the prosecution at trial. It created an exception to a "fundamental" right of an accused. (*People* v. *Ward* (1895) 105 Cal. 652, 656 [39 P. 33].) Nothing in the debates hints that the Constitution was intended to touch upon the use of depositions as a means of discovery or to limit in any way the right of an accused to a deposition.[8]

---

[7] A technical amendment, irrelevant to the present discussion, was also made in the wording of the final portion of the sentence. (*Id.,* at p. 1189.)

[8] "Inasmuch . . . as the tenor of [article I, section 13, as a whole] clearly shows, with the exception noted, that it was intended for the protection of defendants, there is no prohibition upon the power of the legislature to authorize the taking of depositions by the *defendant* in every class of criminal case." (Italics in original.) (*People* v. *Hurtado* (1883) 63 Cal. 288, 294, affd. (1884) 110 U.S. 516 [28 L.Ed. 232, 4 S.Ct. 111, 292].) By contrast, the court noted, "depositions cannot now be used *against* the defendant in cases of homicide." (*Ibid.,* italics in original.)

B. *The Word "Deposition," as Used in the California Constitution, Covers Only Depositions Taken Out-of-Court as Conditional Testimony, and Does Not Cover Depositions Taken Solely for Discovery Purposes.*

An inquiry into the meaning of the word "deposition" as used in article I, section 13, makes even clearer that this constitutional provision was never intended to affect a court's power to provide for discovery by deposition.

In 1879, when the section was adopted, the Legislature had provided for the use of "depositions" in at least nine separate places in the Penal Code:

(1) Sections 1335-1345 provided for "depositions" in the form of a "conditional examination," to be taken *by an accused* of one of his material witnesses if the witness "is about to leave the state or is so sick or infirm as to afford reasonable grounds for apprehending that he will be unable to attend the trial."[9]

Once taken, the "deposition" was admissible at trial by either party, "upon its appearing that the witness is unable to attend . . . ."

(2) Section 1346 extended the "conditional examination" type of deposition, provided for in sections 1335-1345, to prisoner witnesses.[10]

(3) Section 686, subdivision 3, authorized the use of a witness' preliminary hearing "deposition" at trial where (1) the defendant had been present at the hearing and had "either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness" and (2) the witness was dead, insane, or unavailable after the exercise of due diligence.

---

[9]As enacted in 1872, only a defendant could take advantage of these sections, not the prosecution. Moreover, there was no provision for either the defendant or his counsel to be present at the taking of this "deposition." Not until 1905 were these statutory rights extended to the prosecution and the presence of the accused compelled. (Stats. 1905, ch. 540, §§ 1-7, pp. 702-703.)

[10]This section was never applicable to the prosecution. It was repealed in 1941 (Stats. 1941, ch. 106, § 16, p. 1132), but was replaced later that same year by section 2622 (Stats. 1941, ch. 802, § 4, p. 2349). If a judge does not order a prisoner witness produced for a criminal action pursuant to sections 2620 and 2621, section 2622 now provides that the "deposition" of the prisoner may be taken as authorized by sections 1335-1345.

The section also authorized the use at trial of a section 1335 "deposition."[11]

(4) Section 882 provided for a "conditional examination" to be taken "on behalf of the people" of any of their material witnesses who were examined at the preliminary hearing and who were unable to post bond for their appearance in superior court. This "conditional examination" was required to be held "in the presence of the defendant, or after notice to him, if on bail . . . ."[12]

(5) Section 1204 provided for a "deposition" to be used at a convicted defendant's sentencing hearing "when a witness is so sick or infirm as to be unable to attend . . . ."

(6) Section 702 provided for the "deposition" of the "informer, and any witness he may produce" when a peace bond was requested to prevent the threatened commission of an offense.

(7) Section 811 provided for taking the "deposition" of "the informant or prosecutor" by whom an arrest warrant was sought.[13]

(8) Sections 1390-1397 provided for taking "depositions" when a summons against a corporation was sought.[14]

(9) Sections 1526 and 1527 provided for taking the "deposition" of "the complainant, and any witnesses he may produce" when a search warrant was sought.[15]

---

[11] In 1911, section 686, subdivision 3, was broadened to authorize the use of a witness' testimony at a former trial under the same conditions as for the witness' preliminary hearing testimony. (Stats. 1911, ch. 187, § 1, p. 364.) In 1965, the section was totally rewritten. (Stats. 1965, ch. 299, § 139, p. 1368.) It now provides in relevant part that "[t]he deposition of a witness taken in the action may be read to the extent that it is otherwise admissible under the law of this state." (Pen. Code, § 686, subd. 3(b).)

[12] In 1905, the Legislature provided that a section 882 "deposition" "may be used upon the trial of the defendant, except in cases of homicide, under the same condition as mentioned in section [1345] . . . ." (Stats. 1905, ch. 570, § 2, p. 762.)

[13] Repealed by Statutes 1951, chapter 1674, section 26, page 3834. See new Penal Code sections 806 and 813.

[14] These sections were substantially rewritten in 1971. (Stats. 1971, ch. 1591, §§ 1-6, pp. 3206-3207.) The word "deposition" no longer appears.

[15] Since the 1957 amendments to these sections, the word "deposition" no longer appears. (Stats. 1957, ch. 1882, § 1, p. 3288.)

It is indisputable that the word "deposition" as used in article I, section 13, was *not* intended to cover all types of "depositions" that were provided for by law at the time. If the meaning of the word "deposition," as used in the Constitution, were that broad, all of the statutes listed above would have been unconstitutional for failure to provide (1) an exception for use of depositions in homicide cases and/or (2) a requirement that the deposition be taken "in the presence of the party accused and his counsel." That the framers of the Constitution would have intended such a result is doubtful.

Long ago, this court conclusively settled which type of "deposition" was meant in article I, section 13. As pointed out in *People* v. *Clark* (1907) 151 Cal. 200, 205 [90 P. 549], "the constitutional provision [article I, section 13] . . . refers only to 'an ordinary extra-judicial deposition, taken, as it is called, *de bene esse.*' In view of the decisions upon the subject, the matter should be considered finally settled."

The court in *Clark* was quoting from its prior decision in *People* v. *Sierp* (1897) 116 Cal. 249 [48 P. 88]. In *Sierp,* the defendant was on trial for murder. At trial, over his objection, the prosecutor was permitted to read into evidence the preliminary examination testimony of a witness who was no longer available to testify. The defendant conceded that the admission of the evidence was authorized by statute (Pen. Code, § 686, subd. 3, *ante,* p. 540), but contended that its admission violated the clause in article I, section 13, which prohibited the use of depositions in "cases of homicide." This court rejected that contention. "[T]he clause was not intended to relate to, and does not embrace, testimony given at the judicial proceeding known as a preliminary examination. . . . The clause in question clearly refers to an ordinary extrajudicial deposition taken, as it is called, *de bene esse*—that is, conditionally before a commissioner, or some officer authorized to administer oaths, and *based upon the theory of danger of the witness dying, or for certain other reasons not being able to come to the court at the trial.*[16] . . . [T]he language employed in the clause of the constitution in question clearly shows what was meant by the word 'deposition' as then used. . . . [T]he real nature of testimony given at a preliminary examination is not changed in any respect because it is called by a particular name. Indeed, in most of the

---

[16]It would indeed be unlikely that the framers in 1879 intended to prohibit the use of depositions as discovery devices in criminal cases, since discovery by deposition was unknown in 1879. (*Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 536; *Shively* v. *Stewart* (1966) 65 Cal.2d 475, 478 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431].)

cases where such testimony is held admissible, it is called a 'deposition.' " (*Id.,* at pp. 251-252, 254, italics added.)

The "deposition" sought by Runyan in the case now before this court is not a deposition taken for the purpose of preserving testimony for the prosecution. On the contrary, it is sought for the *sole* purpose of discovery by an accused. Thus, it is manifest that the trial court's order for discovery by deposition is not limited by any provision of our Constitution, as the majority suggests.

### III

The majority further claims that the trial court's order for discovery by deposition violates statutory law, in addition to the Constitution. According to the majority, "the Legislature, pursuant to a constitutional grant, has expressed itself on the subject of depositions in criminal cases and has plainly declined to extend deposition procedures beyond those present confines carefully described in Penal Code section 1336." (Majority opn., *ante,* p. 528.) In fact, however, this contention is grounded on a misconception of legislative intent similar to the misconception found in the majority's constitutional argument.

In Penal Code section 1335 et seq., the Legislature has provided for the deposition *de bene esse* authorized by the Constitution: a "deposition" in the form of a "conditional examination" of a material witness is permitted[17] when the witness "is about to leave the state, or is so sick or infirm as to afford reasonable grounds for apprehension that he will be unable to attend the trial . . . ." The purpose of the "deposition" taken pursuant to these sections is to provide a substitute for the witness' testimony "on the trial" in the event "the witness is unavailable as a witness within the meaning of Section 240 of the Evidence Code."[18] (Pen. Code, § 1345.) These Penal Code provisions are silent on the use of

---

[17]A deposition on behalf of the state is permitted only "in cases other than those for which the punishment may be death." (Pen. Code, § 1335.)

[18]Evidence Code section 240 provides:

"(a) Except as otherwise provided in subdivision (b), 'unavailable as a witness' means that the declarant is:

"(1) Exempted or precluded on the ground of privilege from testifying concerning the matter to which his statement is relevant;

"(2) Disqualified from testifying to the matter;

"(3) Dead or unable to attend or to testify at the hearing because of then existing physical or mental illness or infirmity;

"(4) Absent from the hearing and the court is unable to compel his attendance by its

depositions for the purpose of discovery,[19] and, therefore, cannot be construed to be a bar to a court's inherent power to provide for discovery by deposition.

Any doubt about the court's power to provide for discovery by deposition where there is a statutory scheme providing only for depositions to preserve evidence for use at trial was settled by this court more than 10 years ago in *Shively* v. *Stewart* (1966) 65 Cal.2d 475 [55 Cal.Rptr. 217, 421 P.2d 65, 28 A.L.R.3d 1431]. In that case, two doctors requested a hearing officer of the California State Board of Medical Examiners to order discovery prior to a disciplinary hearing on abortion charges. The discovery sought consisted of four subpoenas requesting prehearing depositions and the production of documents. The Administrative Procedure Act (Gov. Code, § 11500 et seq.), which governed the conduct of the disciplinary hearings, contained a provision for the taking of depositions when the witness was unable to or could not be compelled to attend the hearing (Gov. Code, § 11511). However, the Administrative Procedure Act contained no express provision dealing with prehearing discovery by deposition. When the hearing officer refused to comply with the request, the doctors petitioned for a writ of mandate to compel discovery.

This court issued the writ and mandated discovery by deposition, relying on general criminal law discovery principles. "The criminal law analogy is appropriate here," the court said. "Petitioners have been charged with crimes and should have the same opportunity as in

process; or

"(5) Absent from the hearing and the proponent of his statement has exercised reasonable diligence but has been unable to procure his attendance by the court's process.

"(b) A declarant is not unavailable as a witness if the exemption, preclusion, disqualification, death, inability, or absence of the declarant was brought about by the procurement or wrongdoing of the proponent of his statement for the purpose of preventing the declarant from attending or testifying."

[19]The majority erroneously asserts that the Legislature did in fact manifest an intent to bar discovery by deposition when it stated in Penal Code section 1341 that "the examination cannot take place" if the statutory preconditions of sections 1335 and 1336 have not been met. (Majority opn., *ante*, p. 530.) The "examination" referred to obviously is the *conditional examination* provided for by those sections. Runyan does not seek a conditional examination. It is simply a nonsequitur to assert, as the majority does, that the unavailability of a conditional examination ipso facto precludes discovery by deposition. The majority confuses two distinct legal concepts which in the past this court has taken pains to keep separate: "depositions" used to preserve testimony for trial (i.e., a conditional examination) and depositions used for discovery purposes. (See, e.g., *Shively* v. *Stewart, supra*, 65 Cal.2d 475.) Nothing in the codification of the one evidences any legislative intent to preclude the other. (*Id.*, at pp. 478-479.)

criminal prosecutions to prepare their defense." (*Shively, supra,* 65 Cal.2d at pp. 479, 480.)

This court began its analysis by noting that "in authorizing the taking of depositions when the witness will be unable to or cannot be compelled to attend, section 11511 [like Penal Code section 1335 et seq.] provides for depositions, not for the purpose of discovery, but to secure evidence for use at the hearing." (*Id.,* at pp. 478-479.) This statutory scheme, this court held, evidenced "[t]he Legislature's silence with respect to prehearing discovery . . . ." (*Id.,* at p. 479.) This silence "does not mean, however, that it [the Legislature] has rejected such discovery. Instead, *as in the case of criminal discovery* [citation], it has left to the courts the question whether modern concepts of administrative adjudication call for common law rules to permit and regulate the use of the agencies' subpoena power to secure prehearing discovery." (*Ibid.,* italics added.) Noting that "[s]tatutory administrative procedures have been augmented with common law rules whenever it appeared necessary to promote fair hearings and effective judicial review" (*Ibid.*), the court ordered the hearing officer to issue subpoenas (1) to obtain certain documents and (2) to depose two board officers "to determine whether there is 'good cause' for the production of other documents that are neither privileged nor protected as the attorney's work product." (*Id.,* at p. 482.)

In the present case, the majority's arguments fail to overcome the logic and force of this court's opinion in *Shively.* If the statutory scheme providing for depositions to secure evidence at trial indicated a "legislative silence" with respect to depositions as a discovery device in *Shively,* then by the same token, the same conclusion must be drawn here. Since it is well settled that "[l]egislative silence on criminal discovery . . . means that it has left to the courts the adaptation of common law concepts" in the area (*Pitchess, supra,* 11 Cal.3d at p. 536), it is clear there is no statutory bar to a court ordering discovery by deposition as was done in the present case.[20]

---

[20]A Court of Appeal decision subsequent to *Shively* purported to limit the holding therein; it held that *Shively* authorized only a deposition with the "limited purpose" of producing "evidentiary material which the witness [deponent] has in his possession or under his control." (*Everett* v. *Gordon* (1968) 266 Cal.App.2d 667, 672, 673 [72 Cal.Rptr. 379].)

The court in *Everett* recognized that the language of *Shively* conflicted with a pre-existing Court of Appeal decision, *Clark* v. *Superior Court* (1961) 190 Cal.App.2d 739 [12 Cal.Rptr. 191], which had held that a court has no power to order discovery by deposition in a criminal case. The court chose to adopt the reasoning of *Clark* and held that *Shively* was limited by *Clark.* However, as will be seen in Part IV, *post, Clark* was wrongly decided. It follows that *Everett* was likewise wrongly decided.

## IV

In support of its conclusion that discovery by deposition is barred in a criminal case, the majority adopts the Court of Appeal decision in *Clark* v. *Superior Court, supra,* 190 Cal.App.2d 739[21] and relies on this court's opinions in *Reynolds* v. *Superior Court* (1974) 12 Cal.3d 834 [117 Cal.Rptr. 437, 528 P.2d 45] and *Bailey* v. *Superior Court* (1977) 19 Cal.3d 970 [140 Cal.Rptr. 669, 568 P.2d 394]. However, *Clark* was based on faulty premises which led the Court of Appeal to an unsound result, and the doctrines set forth in *Reynolds* and *Bailey* are inapplicable to this case.

In *Clark, supra,* 190 Cal.App.2d 739, the Court of Appeal held that a court has no power to order discovery by deposition in a criminal case. This result was based on the following premises: (1) "the Legislature, over the years, has seen fit to provide for the taking of depositions of prosecution witnesses in criminal cases only in the limited situations set forth in [Penal Code sections 1335, 1336, 1349]" (*Id.,* at p. 741); (2) "the California Constitution seems to qualify the right to depositions in criminal cases [by] article I, section 13" (*Ibid.*); and (3) it is "highly significant" that "in 1957 the Legislature greatly liberalized discovery and the taking of depositions in civil cases" but "made no change in the statutes concerning depositions in criminal cases." (*Id.,* at p. 742.)

Each of these premises is unsound. First, it is incorrect that Penal Code section 1335 et seq. were the only statutory provisions for depositions in criminal cases. As indicated earlier (*ante,* pp. 540-541), the Legislature has over the years provided for depositions in at least eight other Penal Code sections.

Second, as extensively discussed in Part II, *ante,* the Constitution was intended solely to authorize a deposition *de bene esse,* not to limit the use of depositions in other areas. Indeed, were the Court of Appeal correct that the Constitution limits "the right to depositions in criminal cases," then, as noted, all of the other code sections enacted by the Legislature over the years providing for "depositions" would be unconstitutional for failure to provide an exception in cases of homicide and/or to provide for the presence of the party accused and his counsel.

---

[21]The majority has cited a number of cases, which follow *Clark* without analysis. (Majority opn., *ante,* p. 529.) These cases, like *Clark,* should be disapproved.

Finally, an incorrect inference was drawn from legislative inaction on criminal discovery. As this court has repeatedly held, the correct inference to be drawn from the Legislature's silence in the criminal area is that it has left the field to the courts. (*Pitchess, supra,* 11 Cal.3d at p. 536; *Shively, supra,* 65 Cal.2d at p. 479.) Further, the fact that the Legislature enacted comprehensive legislation regarding depositions in civil cases has no bearing on criminal discovery. As this court pointed out in *Pitchess, supra,* 11 Cal.3d at p. 536, "civil discovery procedure has no relevance to criminal prosecutions." The reasoning in *Clark* is clearly wrong and should be disapproved.

The next case relied on by the majority in denying discovery by deposition is *Reynolds, supra,* 12 Cal.3d 834. From *Reynolds,* the majority culls policy considerations purportedly applicable here: the court should not exercise its inherent discovery powers when (1) "the issues involve . . . 'complex and closely balanced questions,' " (majority opn., *ante,* p. 532) and (2) the discovery procedure in question is not " 'necessary to protect some fundamental constitutional principle or to effectuate some specific constitutional guarantee of individual liberty [but rather merely] may seem to some socially desirable . . . .' " (*Ibid.,* italics omitted.) Neither of these "considerations" is in fact involved in this case.

As to the first of these considerations, the majority opinion is somewhat misleading. The full quotation from *Reynolds, supra,* 12 Cal.3d at p. 837, from which the majority's language comes, speaks to "complex and closely balanced questions *of state and federal constitutional law* . . . ." (Italics added.) Thus, as the court recognized in *Allen* v. *Superior Court* (1976) 18 Cal.3d 520, 524 [134 Cal.Rptr. 774, 557 P.2d 65], this consideration applies *only* where "intricate state and federal constitutional questions [are] presented."[22] In the present case, it is not contended that the federal Constitution bars the order for discovery by deposition made by the municipal court, and as shown above, there is no provision in the state Constitution that even touches upon depositions as a means of discovery.

As to the second consideration, the quotation from *Reynolds* is taken out of context. If the majority were correct that this court can promulgate

---

[22]In *Allen, supra,* a closely divided court struck down a trial judge's order that a criminal defendant reveal the names of his witnesses so that they might be read to the prospective jurors. However, the seven justices were unanimous that the court had the power to authorize such discovery and that the rationale of *Reynolds* did not apply to that case.

discovery rules only when constitutionally "necessary," then there could be no judicially created rules of discovery in California, since—as the majority notes elsewhere in its opinion—our liberal discovery rules are generally not constitutionally compelled. (Majority opn., *ante,* p. 530.) This result would not only be absurd, but would conflict with nearly every decision on discovery by this court since *Riser* in 1956. Surely, the majority could not intend such a result.[23]

The final case relied on by the majority, *Bailey* v. *Superior Court, supra,* 19 Cal.3d 970, is likewise inapplicable. There the defendant in a civil action sought to record and report the proceedings at a deposition by means of videotape. After reviewing the applicable code sections, this court concluded that since the Legislature had directed that deposition testimony be stenographically recorded and transcribed in writing unless the parties agreed otherwise, the Legislature should determine whether other methods of recording and reporting depositions should now be authorized. (*Id.,* at pp. 974, 978.)

Thus, in *Bailey,* this court was presented with an issue on which the Legislature had specifically spoken. However, the situation is quite different in the present case. As discussed extensively in Part III, *ante,* while the Legislature has addressed the issue of the use of depositions in criminal actions to preserve testimony for trial, it has not done so with regard to the use of depositions for discovery purposes. As the majority recognizes, in the criminal area, "legislative silence on the subject of discovery 'means that it has left to the courts the adaptation of common law concepts.' " (Majority opn., *ante,* p. 527, quoting from *Pitchess* v. *Superior Court, supra,* 11 Cal.3d at p. 536.)

## V

A court has not abused its discretion when it grants discovery by deposition in a case where an individual has been accused of several

---

[23]The issue in *Reynolds* was whether this court should judicially create a rule for discovery *by the state* of an alibi defense of an accused. The court unanimously declined to do so.

The passage from *Reynolds,* quoted by the majority, arose "in the [limited] context of the dichotomy between judicial rule-making inspired or required by constitutional limitations on the power of government, and judicial rule-making which would merely grant to the government rights which it might legislatively claim for itself . . . ." (*Reynolds, supra,* 12 Cal.3d at p. 846.)

Thus, the principle set forth in that passage applies only "when the court's common law powers are sought to be invoked not so as to effectuate the protections constitutional-

serious criminal offenses and he was knocked unconscious and cannot remember the events underlying those charges; the police officers are the only other persons who know what occurred; and there is a possibility that some evidence against the accused may have been fabricated.

The trial court specifically found that Runyan could not prepare an adequate defense without the ability to depose these police officers. In order to ensure a fair trial to an accused, it is clear that our courts possess broad discretion in the area of criminal discovery. A careful review of the state Constitution and statutes indicates there is no impediment to the exercise of jurisdiction in this area by a trial court. Therefore, the judgment of the lower court should be affirmed.

Tobriner, J., concurred.

The petition of the real party in interest and respondent for a rehearing was denied March 9, 1978. Bird, C. J., and Tobriner, J., were of the opinion that the petition should be granted.

---

ly guaranteed to an otherwise helpless accused, but to give the state the full benefit of the legislative leeway constitutionally accorded it." (*Id.*, at pp. 847-848.) It is clearly inapplicable when, as here, an accused seeks to protect his right to a fair trial.