[Crim. No. 12901. Third Dist. Jan. 14, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
ALLEN RAY ARMBRUSTER, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Parts II and III are not to be published, as they do not meet the standards for publication (Cal. Rules of Court, rule 976.1). See *post,* page 665.

**COUNSEL**

Richard K. Uno, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Charles P. Just and Eddie T. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**PUGLIA, P. J.**—A jury convicted defendant of forcible rape (Pen. Code, § 261, subd. (2)), and the trial court imposed the middle term of six years in state prison. On appeal, defendant challenges the constitutionality of Penal Code section 1112 which prohibits the trial court from ordering a victim in a sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her credibility. He also contends the evidence is insufficient to support the conviction and that the court improperly weighed and determined aggravating and mitigating circumstances in imposing the middle term. These contentions are without merit and we shall affirm the judgment. Inasmuch as part II and part III dealing with sufficiency of the evidence and the challenge to the sentence respectively do not meet the standards for publication, they are not to be published (rule 976.1, Cal. Rules of Court).

Beulah H., age 9, testified that in November 1982, the defendant forcibly raped her. A police officer recounted certain postarrest admissions defendant made to him. The only defense witness was Dr. Judy Cook, who examined Beulah on December 29, 1982. She did not observe any evidence of recent physical trauma corroborative of a rape, but noted that any such condition could have healed in a month. She testified that Beulah's hymen was no longer intact, but she could not discern the cause of that condition.

I

Prior to trial, defendant moved for an order requiring Beulah to undergo a psychiatric examination "in order to aid the trier of fact in its assessment of [her] competency and credibility." The court denied the motion solely on the basis of Penal Code section 1112, which provides: "The trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her credibility." (Added by Stats. 1980, ch. 16, § 1, p. 63.) ■ ■ ■ ■ Defendant challenges that ruling, urging that section 1112 violates several provisions of both the state and federal Constitutions.[1]

---

[1] In part, defendant sought the mental examination in order "to aid the trier of fact in its assessment of [Beulah's] competency . . . ." Although defendant does not address the point, section 1112 would not have applied to this aspect of the motion since that section only proscribes mental examinations for the purpose of assessing *credibility.* The court's denial of the motion was nonetheless correct since the jury has no hand in assessing a witness' competency. (Evid. Code, §§ 310, subd. (a), and 700-704; Witkin, Cal. Evidence (2d ed. 1966) §§ 768, 769, pp. 716, 717.) In any event, defendant did not object at trial to Beulah being sworn as a witness. (Witkin, *op. cit. supra.*)

■ First, defendant argues Penal Code section 1112 operates to deny him due process of law in that it deprives him of the right to confront his chief accuser. Principally, he urges that the bar imposed by this section made impossible the effective cross-examination of Beulah.

By requesting a mental examination, defendant merely sought discovery which may or may not have led to evidence relevant to Beulah's credibility. Due process does not compel pretrial discovery in favor of a defendant. (*Jones* v. *Superior Court* (1962) 58 Cal.2d 56, 59-60 [22 Cal.Rptr. 879, 372 P.2d 919, 96 A.L.R.3d 1213].) Therefore, the Supreme Court did not act under constitutional compulsion when it held in *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416], that "discretion should repose in the trial judge to order a psychiatric examination of the complaining witness in a case involving a sex violation . . . ." (See *People* v. *Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 530-531 [143 Cal.Rptr. 609, 574 P.2d 425, 2 A.L.R.4th 681].) *Ballard* dealt with the courts' inherent power, in the absence of germane statutory law, to promote the orderly ascertainment of truth through discretionary pretrial discovery. (See *Jones* v. *Superior Court, supra.*) It follows then that when Penal Code section 1112 was enacted so as to abrogate the *Ballard* decision to that extent, the legislation did not trench on constitutionally guaranteed rights of due process.

■ Second, defendant apparently urges that enactment of Penal Code section 1112 constituted a violation of substantive due process guaranties. ■ The cardinal principle of substantive due process is that a law which deprives a person of life, liberty, or property must not be the product of arbitrary legislative judgment. (*Palko* v. *Connecticut* (1937) 302 U.S. 319, 327 [82 L.Ed. 288, 293, 58 S.Ct. 149], overruled on other grounds in *Benton* v. *Maryland* (1969) 395 U.S. 784, 793-794 [23 L.Ed.2d 707, 715, 89 S.Ct. 2056].) Such a law must be reasonably related to the object sought to be attained by its enactment. (See *Barsky* v. *Board of Regents* (1954) 347 U.S. 442, 452-453 [98 L.Ed. 829, 840, 74 S.Ct. 650].) ■ We perceive no arbitrariness in section 1112. *Ballard* prompted increased exercise by trial courts of the authority to order the prosecutrix in a sex case to undergo a mental examination testing her credibility. The Legislature halted that trend by enacting section 1112, the evident purpose of which is to spare victims of sex crimes the inconvenience and embarrassment of a mental examination, a procedure of debatable value to the ascertainment of the truth in such cases (*Ballard, supra,* pp. 174-175, fn. 10) and a probable disincentive to more widespread reporting of sex offenses. The enactment of section 1112 represents the Legislature's sound assessment of the practice given impetus by *Ballard* and the resulting prohibition bears a reasonable relationship to the evident legislative purpose to counteract that practice.

■ Third, defendant contends Penal Code section 1112 operates to deny him equal protection of the laws. Even assuming for present purposes that section 1112 theoretically involves disparate treatment of defendants in sex and nonsex cases, such disparity would not sustain defendant's equal protection claim. A statute is not invalid simply because it does not cover the whole of a permissible field. The Legislature may recognize degrees of evil and act to correct the greater ones. (*Werner* v. *Southern Cal. etc. Newspapers* (1950) 35 Cal.2d 121, 132 [216 P.2d 825, 13 A.L.R.2d 252].) We take note of the paucity of precedent for court-ordered mental examinations of witnesses in nonsex cases. (*In re Darrell T.* (1979) 90 Cal.App.3d 325, 335 [153 Cal.Rptr. 261]; see *People* v. *Haskett* (1982) 30 Cal.3d 841, 859, fn. 8 [180 Cal.Rptr. 640, 640 P.2d 776].) The Legislature could reasonably have acted to ameliorate an intolerably invasive discovery practice utilized principally, if not exclusively, in the prosecution of sex offenses. The remedy embodied by section 1112 was rationally conceived and circumscribed.[2]

■ Fourth, defendant argues Penal Code section 1112 violates article I, section 28, subdivision (d), of the California Constitution, which provides in pertinent part that "relevant evidence shall not be excluded in any criminal proceeding. . . ." The People enacted article I, section 28, subdivision (d), by initiative in 1982 in order to expand the range of admissible evidence. On its face this section appears to supersede certain statutory provisions which otherwise operate to render certain types of relevant evidence inadmissible. Section 1112, enacted in 1980, is not such a provision since it has no direct bearing on the admissibility or inadmissibility of evidence. As noted above, its only effect is to divest trial courts of the discretion to order mental examinations of witnesses in sex cases where the object is to test the witness' credibility. Article I, section 28, subdivision (d) does not repeal Penal Code section 1112.

II*

. . . . . . . . . . . . . . . . . . . . .

---

[2]Citing *People* v. *Olivas* (1976) 17 Cal.3d 236 [131 Cal.Rptr. 55, 551 P.2d 375], defendant argues this court must subject section 1112 to the "strict scrutiny" standard for equal protection analysis because, by denying him due process, the statute deprives a defendant in a sex case of his fundamental interest in personal liberty. Even assuming arguendo that section 1112 creates a disparity of treatment sufficient to raise an equal protection issue, *Olivas* is inapposite. There, the statute in question (Welf. & Inst. Code, § 1731.5) authorizing commitment of specified persons to the Youth Authority clearly operated to deny such individuals their fundamental interests in liberty. Here, the operation of section 1112 has no similar direct bearing on defendant's personal liberty. Rather, it merely affects his method of preparing for a trial in which he would be presumed innocent. As such, the limitation created by section 1112 need only have been rationally conceived and related to its underlying purpose. (*Koski* v. *James* (1975) 47 Cal.App.3d 349, 354, fn. 1 [120 Cal.Rptr. 754].)

*See footnote, *ante,* page 660.

## IV.

The judgment is affirmed.

Carr, J., and Sparks, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 14, 1985.