[No. A023260. First Dist., Div. Two. Jan. 16, 1986.]

In re DOLLY A., a Person Coming Under the Juvenile Court Law.
ROBERT M. WEIGEL, as Chief Probation Officer, etc.,
Plaintiff and Respondent, v.
ROBERT A., Defendant and Appellant.

COUNSEL

John Kevin Crowley for Defendant and Appellant.

Leo Himmelsbach, District Attorney and Robert J. Masterson, Deputy District Attorney, for Plaintiff and Respondent.

OPINION

ROUSE, J.—Defendant Robert A. appeals from an order declaring his daughter, Dolly, a dependent child of the court (Welf. & Inst. Code, § 300) and from a subsequent dispositional order.[1] We reverse the jurisdictional order and remand for a new jurisdictional hearing.

I.

Dolly is the daughter of divorced parents. In February 1983, Dolly, who was then seven years of age, returned from a weekend visit to her father, defendant Robert A., and told her mother that during that visit and on

---

[1]Defendant appeals from the dispositional order of the court made May 19, 1983. We construe his appeal as also being taken from the order of April 20, 1983, which was made subsequent to the jurisdictional hearing and which found the allegations of the petition to be true.

previous visits defendant had fondled her genitals and taken photographs of her in nude poses. A medical examination found Dolly's vaginal area to be reddened and tender, and a search of defendant's home uncovered seven Polaroid snapshots of Dolly posing nude.

A petition filed March 3, 1983, alleged that Dolly was residing in a home unfit by reason of depravity because of sexual molestation by defendant. (Welf. & Inst. Code, § 300, subd. (d).) Criminal charges were also instituted against defendant for violations of Penal Code section 288, subdivision (a) (lewd and lascivious conduct with a minor). In the criminal matter, defendant was released on his own recognizance under an order prohibiting him from having contact with Dolly.

On three occasions the jurisdictional hearing in the dependency matter was continued at defendant's request. On April 18, 1983, defendant moved for an order requiring Dolly to submit to a psychiatric evaluation. On the same day, defendant also moved to continue the dependency proceeding pending completion of his trial on the criminal charges, and also moved for an order granting him discovery of various school, medical, law enforcement and social agency records. All three motions were denied on April 19, 1983.

On April 20, 1983, the jurisdictional hearing was held. Defendant submitted his case on the probation report. The petition, as amended to allege that the acts of molestation had occurred "on or about, during and between the months of Nov. 1982 and Feb. 1983," was found to be true.

At the dispositional hearing held on May 19, 1983, Dolly was put in the custody of her mother under the supervision of a probation officer. The court also ordered that she was to have no contact with defendant.

II.

*Continuance*

Defendant argues that the court ought to have granted his request to continue the dependency hearing pursuant to Welfare and Institutions Code section 352, subdivision (a), since a continuance would not have worked a hardship on Dolly, whereas denial of the continuance seriously impaired his ability to present a defense both in the dependency matter and in the criminal action pending against him.

Welfare and Institutions Code section 352, subdivision (a)[2] gives the juvenile court discretion to continue a dependency hearing on the request of a party unless the court concludes that a continuance would be contrary to the interests of the minor. In assessing whether a continuance will be contrary to the minor's interests, the court must look to three factors set out in the section.

Defendant argues that, in this instance, none of the three itemized factors were present. In April 1983, Dolly was living with her mother. From the time of defendant's arraignment, he was prohibited by court order from visiting Dolly. Likewise, beginning April 6, 1983, there was an order of the juvenile court providing that Dolly was to remain with her mother and "to have no contact with [her] father." Thus, when the court denied defendant's request for a continuance on April 19, Dolly was living with her mother in the same home as she had been since her parents separated some six months after her birth. The sole change in her living arrangement was that she would no longer pay bimonthly visits to defendant. Defendant contends that under these circumstances, Dolly was neither undergoing a temporary placement nor living in an environment any less stable than that in which she had spent virtually all of her life. Likewise, he argues, the prompt resolution of her custody status was also irrelevant since Dolly was still in the primary care of her mother and the delay until the criminal matter was to be heard would have been no more than "six to ten weeks . . . ."

At the hearing on the motion to continue, Dolly's counsel apparently conceded that none of the factors specifically set out in section 352 were applicable here. Instead, he urged the court to deny the motion because delay would be traumatic for Dolly, particularly since she would likely dread giving testimony against defendant.

While it is entirely plausible that the victim of a sexual assault would dread having to testify about the assault and would be especially uncomfortable about accusing her father, it is difficult to know whether a seven-year-old child would be caused great anxiety by such a prospect or by potential delay in giving her testimony. Arguably, the worst injury that a continuance could have caused Dolly would have been the risk that after six to ten weeks she would have been unable to recall the assaults precisely;

---

[2]That section provides: "Upon request of counsel for the parent, minor, or petitioner, the court may continue any hearing under this chapter beyond the time limit within which the hearing is otherwise required to be held, provided that no continuation shall be granted if contrary to the interest of the minor. In considering the minor's interests, the court shall give substantial weight to a minor's need for prompt resolution of his or her custody status, the need to provide children with stable environments, and the damage to a minor of prolonged temporary placements."

hence, assuming that such assaults had in fact occurred, Dolly's inability to testify to them might well result in a continuation of defendant's visitation rights, with the possibility of future molestation by him.

Here, counsel for the minor conceded that none of the specific factors to be given "substantial weight" under Welfare and Institutions Code section 352 existed, and the court pointed to nothing which made a delay contrary to Dolly's interest. Absent a finding of contrary interest, the court's decision to grant or deny the continuance was discretionary. Defendant contends that the court abused its discretion in denying the continuance where to do so imposed a substantial burden upon his rights.

Defendant argues that his interest as "a parent in the companionship, care, custody and management of his [child] is a compelling one, ranked among the most basic of civil rights." (*In re B. G.* (1974) 11 Cal.3d 679, 688 [114 Cal.Rptr. 444, 523 P.2d 244]; *Stanley* v. *Illinois* (1972) 405 U.S. 645, 651-652 [31 L.Ed.2d 551, 558, 92 S.Ct. 1208].) This interest was, he argues, infringed upon when the court refused to grant him a continuance, and he was then forced to elect whether to testify at the dependency proceeding and run the risk that his testimony would be used either directly or indirectly in his criminal prosecution or to decline to testify and forego defending his rights to custody of Dolly.

In seeking the continuance, defendant argues that despite Welfare and Institutions Code section 355.7, which provides that the testimony of a parent in a proceeding brought under Welfare and Institutions Code section 300, subdivision (d), "shall not be admissible as evidence in any other action or proceeding," the validity of that statute was unclear following the passage of Proposition 8 in June 1982. Specifically, defendant cites the so-called "Truth-in-Evidence" section which provides that all relevant evidence shall be admissible in a criminal proceeding. (Cal. Const., art. I, § 28, subd. (d).)[3]

Defendant also raises the alternative argument that, even if Welfare and Institutions Code section 355.7 was not abrogated by Proposition 8, if he were to give testimony at the dependency hearing, he would, in effect, give the district attorney's office a "deposition" or preview of what his testimony at the criminal trial was likely to be. Thus, he argues, the prosecuting authorities would thereby be given the opportunity, otherwise unavailable to them, to depose a criminal defendant prior to trial on the criminal charges.

---

[3]At the hearing on the motion, the court specifically cited the rule embodied in Welfare and Institutions Code section 355.7 as authority that defendant's testimony could not be used in the criminal action.

Faced with these unpalatable possibilities should he take the stand in the juvenile court proceeding, defendant contends he had no choice but to submit the dependency determination on the probation report. As the court informed defendant, that decision to submit was tantamount to conceding his custody rights: "My understanding submitting it on the probation report is that you [defendant] are having a court trial, and you're almost a hundred percent certain if you submit it on the probation report that the court will sustain the petition."

In this instance, where denial of a continuance forced defendant to elect between giving up his right not to be deposed as a criminal defendant and his right to testify on his own behalf in the proceeding to deprive him of custody of his daughter, we find it was an abuse of discretion to deny the continuance. The risk of possible injury to Dolly's interests was relatively slight, whereas the infringement upon defendant's rights was a clear and serious danger. Accordingly we remand for a new jurisdictional hearing.

III.

a. *Applicability of Penal Code Section 1112*

In light of our determination that the case must be remanded for a new hearing, we address defendant's additional claims of error for the guidance of the juvenile court at the second hearing. Defendant cites as error the denial by the court of his motion for a psychiatric examination of Dolly, based upon the rule of *Ballard* v. *Superior Court* (1966) 64 Cal.2d 159, 176-177 [49 Cal.Rptr. 302, 410 P.2d 838, 18 A.L.R.3d 1416]. The *Ballard* court held that the complaining witness in a criminal case involving a sex violation could be ordered to submit to a psychiatric examination if the defendant demonstrated a compelling need for such examination, as where there was little or no corroboration of the charge or the complaining witness' mental or emotional condition was in question. The trial court found that this so-called *Ballard* motion was precluded by Penal Code section 1112, which the court found to be inapplicable to dependency proceedings brought under Welfare and Institutions Code section 300.

Penal Code section 1112 prohibits trial courts from ordering the psychiatric examination of victims of sexual assaults for the purpose of determining their credibility.[4] Passage of Penal Code section 1112 operated to invalidate the holding in *Ballard*. (*People* v. *Haskett* (1982) 30 Cal.3d 841,

---

[4]Section 1112 as it read in 1983 provided that "[t]he trial court shall not order any prosecuting witness, complaining witness, or any other witness, or victim in any sexual assault prosecution to submit to a psychiatric or psychological examination for the purpose of assessing his or her credibility."

859, fn. 7 [180 Cal.Rptr. 640, 640 P.2d 776].) On its face the section prohibits such examinations "in any sexual assault prosecution."

Defendant contends that the juvenile court erred in finding that Penal Code section 1112 barred a psychiatric examination here because, he argues, that section is applicable only to criminal prosecutions and is thus inoperable in dependency proceedings which are primarily civil in nature.

It is clear from the legislative history of section 1112 that it was intended to apply to prosecutions for lewd and lascivious conduct with a child. (Pen. Code, § 288.) A version of Senate Bill No. 500, a predecessor of the legislation which was eventually passed and signed into law, included a subdivision (b) which provided that the bar against psychiatric examination would not apply "when the alleged offense is prosecuted or is prosecutable under Section 288." Inasmuch as that language was deleted in the final version of the bill, we can infer that the Legislature intended to apply the proscription against such psychiatric examinations to sexual assaults on child victims.

■ The crucial issue here, then, is not the fact that Dolly is a child, but whether a dependency proceeding is civil or criminal in nature. The answer to that question turns upon whether we view a dependency action from the vantage point of the parent or that of the child. There is authority for the view that a dependency proceeding is a "true civil cause, comparable in essentials to a child custody controversy between parents, except that the controversy is not between parents but one between a parent (or parents) and the state as *parens patriae.*" (*In re Robinson* (1970) 8 Cal.App.3d 783, 786 [87 Cal.Rptr. 678]; cert. den. *sub nom. Kaufman* v. *Carter* (1971) 402 U.S. 964 [29 L.Ed.2d 128, 91 S.Ct. 1624].) The *Robinson* court adopts, in essence, the view of the child for whom the question of custody is truly civil.

However, from the vantage point of the parent, especially a parent who is facing the loss of future contact with his child because of the alleged "depravity" of his own behavior, the dependency proceeding is more nearly criminal in nature. "In most dependency matters the focus is against the parent and the prospect faced is the drastic result of loss of his child. Although legal scholars may deemphasize the adversary nature of dependency proceedings and characterize the removal of the child from parental custody as nonpunitive action in the best interests of the child, most parents would view the loss of custody as dire punishment." (*Lois R.* v. *Superior Court* (1971) 19 Cal.App.3d 895, 901 [97 Cal.Rptr. 158].)

■ Here, defendant faced not only loss of custody of Dolly, but also criminal charges, both punitive actions arising from the same alleged acts

of molestation.[5] Because the dependency proceeding was, in this instance, more nearly criminal than civil, we conclude that the trial court correctly refused to permit a psychiatric examination of Dolly.

### b. *Constitutionality of Penal Code Section 1112*

Defendant also contends that even if Penal Code section 1112 is applicable to dependency proceedings, it is unconstitutional because it denies due process and equal protection under both the California and United States Constitutions and because it is contrary to the Truth-in-Evidence provision of the California Constitution. (Cal. Const., art. I, § 28, subd. (d).) Similar challenges to the constitutionality of Penal Code section 1112 have previously been rejected by the appellate court. (*People* v. *Armbruster* (1985) 163 Cal.App.3d 660, 664-665 [210 Cal.Rptr. 11]; *People* v. *Fleming* (1983) 140 Cal.App.3d 540, 544 [189 Cal.Rptr. 619].) Nor do we find persuasive defendant's contention that Penal Code section 1112 operates to deny effective assistance of counsel because it prevents counsel from fully preparing a defense. A similar argument could be made against any limitation of discovery.

### IV.

### *Denial of Discovery*

■ Finally, defendant maintains that the court erred in denying his motion to discover "records, memorand[a] and information" both "oral or written" possessed by some 16 individuals, schools, hospitals and agencies. In denying the motion, the court found that the request was "too broad" and concluded that it should be denied because the court had "no recognizable standard upon which to judge the relevance of these items . . . ." The court did note that certain school records, records of the county juvenile probation department and of the county child abuse center would be made available to defendant if they were in the possession of the district attorney. However, as to records of other hospitals and individual doctors, the court declared that it had no way to judge the relevance of the requested records, which in any event might be privileged.

Juvenile courts, like all other courts, possess inherent power to order discovery. (*Joe Z.* v. *Superior Court* (1970) 3 Cal.3d 797, 801-802 [91

---

[5]Had the motion for a psychiatric examination of Dolly been granted, defendant would presumably have been able to use the results of that examination in his defense to the criminal charges. Thus, he would have benefited from discovery in the dependency proceeding in precisely the same way he claims that the district attorney would have sought to use his potential testimony in the dependency proceeding in such a manner as to avoid the bar against deposing criminal defendants.

Cal.Rptr. 594, 478 P.2d 26].) That power may be exercised subject to a showing by the party seeking discovery of "good cause" for the material he seeks which must be set out with "specificity" and accompanied by a "plausible justification" of need for the material. (*Id.*, at p. 804.) This rule, originally articulated in the context of a delinquency proceeding and thus based upon analogous criminal procedures, is likewise applicable to dependency proceedings brought under Welfare and Institutions Code section 300. (See Advisory Com. com. to Cal. Rules of Court, rule 1341, West's Ann. Rules (1981 ed.) p. 269; Deering's Cal. Codes Ann. Rules (1980 ed.) pp. 361-362.) We review the denial of discovery orders under an abuse of discretion standard. (*Joe Z. v. Superior Court, supra,* at p. 802.)

Defendant argues that broad discovery, such as that available in civil matters, should be permitted in dependency hearings. Whatever the merit of that contention, the argument is unsupported by current law or by the theory of juvenile practice which seeks the speedy and informal resolution of dependency cases. (Welf. & Inst. Code, § 350.) Here, defendant was not seeking information which was available to the district attorney but unavailable to him. Nor did he make any particularized claims of how the information he sought was relevant to the current inquiry, other than to argue generally that this case involved a "long history of family disputes, court hearings . . . ." Under these circumstances, we cannot say that the court abused its discretion in refusing to grant the discovery order.

The orders are reversed and the matter remanded to the juvenile court for a new jurisdictional hearing.

Kline, P. J., and Smith, J., concurred.