Filed 2/26/13  P. v. Reynozo CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RODRIGO ARMANDO REYNOZO,<br><br>    Defendant and Appellant. | 2d Crim. No. B242006<br>(Super. Ct. No. 2011033000)<br>(Ventura County) |

Rodrigo Armando Reynozo appeals his conviction, by jury, of making a criminal threat against his sister, Mariela Reynozo.  (Pen. Code, § 422.)[1]  The jury acquitted appellant of having made a criminal threat to his mother, Victoria Reynozo. Appellant was sentenced by the trial court to the middle term of two years.  He contends:  the judgment is not supported by substantial evidence because there is insufficient evidence his sister was actually and reasonably in sustained fear, an element of the offense; the trial court erred in failing to instruct on attempted criminal threat as a lesser included offense; the trial court erred when it admitted evidence of his prior conviction for making a criminal threat against his mother; and the trial court erred in entering a protective order because appellant was not granted probation and

---

[1] All statutory references are to the Penal Code unless otherwise stated.

was sentenced to prison instead.  We strike the protective order and, in all other respects, affirm.

*Facts*

Appellant is 32 years old and lives in his parents' house.  When he was about 14 years old, appellant was shot in the head with a BB gun.  In the aftermath of that injury, appellant experienced extreme changes in his behavior and personality.  His family describes him as depressed, angry, and aggressive.   He does not always take the medication prescribed to treat a mental health condition.  Appellant abuses alcohol.  He also is sometimes physically and verbally abusive toward his family members.

On September 10, 2011, appellant, who had been drinking, became angry with his mother, Victoria Reynozo.  He began swearing at her, calling her insulting names and pushing her.  Appellant told Victoria that she was going to die and he was going to make taquitos out of her body.   Victoria got scared and left the house.  She spent the next several hours at a friend's house, returning only after appellant had gone to sleep.  She testified that she has been forced out of her house on many occasions because she was afraid appellant would hurt her.

Victoria also testified that, in February 2010, appellant accosted her and her husband, appellant's father, as they drove into their driveway one night.  Appellant ran up to the car and kicked as he yelled at them.  Victoria got out of the car and asked appellant what was the matter.  Appellant's father also tried to calm him down, but appellant grabbed him by the jacked and pushed him away, calling him a "fucking old man."  Appellant would not let Victoria get back into the car.  He called her names and told her that he was going to cut her head off and throw it in the trash.  By the time a police officer arrived, Victoria had managed to get back in the car.  She told the officer that appellant had not physically injured her that night.  Victoria asked if she could leave and the officer said she could.  She drove to Mariela's house where she stayed for about one week before she returned to the house.   In March 2010, Victoria

2

reported to police what appellant had said about cutting off her head and throwing it in the trash. Appellant pleaded guilty to a misdemeanor violation of section 422.

On September 13, 2011, appellant's younger sister, Mariela, came to the house to help their mother clean. Appellant started to insult Mariela, told her that she could not be there and said he did not want to see her. He was angry and aggravated, but Mariela refused to leave. Appellant kept moving toward Mariela, calling her names and telling her to leave. When he was about one foot away from her, appellant told Mariela he was going to cut off her head and maggots were going to come out. Mariela started backing up, toward the front door to go outside because she "didn't know if he was going to push me . . . . I didn't know his intention. . . . I just thought it was safer for me to be outside." Appellant was very angry. She called the police as she was walking out the door.

Mariela testified that she was afraid of appellant because "he's always been so aggravated." She was worried that he might carry out his threat, but she didn't know "what kind of actions he was going to do or, I mean, you can't always trust somebody." When the police arrived, Mariela and appellant were outside, yelling at each other. She was trembling and crying. She understood appellant's statement about cutting her head off to be a threat.

*Discussion*

*Substantial Evidence*

Appellant contends his criminal threat conviction is not supported by substantial evidence because there is no evidence that Mariela was actually and reasonably in sustained fear of him. For this argument, he relies on Mariela's testimony that his threat made her feel, "Pretty angry but I am pretty used to it . . . ." Mariela explained that, when appellant threatened to cut her head off, she felt, "Just sad because I understand his situation." Anger and sadness do not, he contends, satisfy the reasonable sustained fear element of the section 422 offense. We are not persuaded.

3

A defendant violates section 422 where: (1) the defendant threatens to commit a crime that will result in death or great bodily injury to another person; (2) "the defendant made the threat 'with the specific intent that the statement . . . is to be taken as a threat, even if there is no intent of actually carrying it out[;] ' " (3) the threat was unequivocal, unconditional and immediate enough " 'to convey to the person threatened, a gravity of purpose and an immediate prospect of execution of the threat[;] ' " (4) the threat actually caused the person threatened to be in sustained fear; and (5) the threatened person's fear was reasonable under the circumstances. (*People v. Toledo* (2001) 26 Cal.4th 221, 227-228.) A "sustained" fear is one that exists for a period of time extending "beyond what is momentary, fleeting or transitory." (*People v. Allen* (1995) 33 Cal.App.4th 1149, 1156.) Further, "The victim's knowledge of defendant's prior conduct is relevant in establishing that the victim was in a state of sustained fear." (*Id.*)

To determine whether appellant's conviction is supported by substantial evidence, we review " ' the entire record in the light most favorable to the prosecution to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128 . . . .)" (*People v. Tafoya* (2007) 42 Cal.4th 147, 170 .) The question is " ' "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." [ Citations.]' (*People v. Earp* (1999) 20 Cal.4th 826, 887.)" (*People v. Farnam* (2002) 28 Cal.4th 107, 142.) We "presume the existence of every fact the trier could reasonably deduce from the evidence in support of the judgment. . . . The test is whether substantial evidence supports the decision, not whether the evidence proves guilt beyond a reasonable doubt. [ Citations.]" (*People v. Mincey* ( 1992) 2 Cal.4th 408, 432.) We may not re- weigh the evidence or second-guess credibility determinations made by the jury. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

4

"Simply put, if the circumstances reasonably justify the jury's findings, the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." (*People v. Farnam, supra*, 28 Cal.4th at p. 143.)

Here, appellant told Mariela that he was going to chop her head off and maggots were going to come out. She understood this to be a threat and it made her feel afraid. She did not know what appellant might do to her because she knew him to be unpredictable. When he made the threat, appellant was very angry, was standing only about one foot away from her and was moving closer to her. She was so concerned that she decided to leave the house because she thought it would be safer outside. Mariela walked backwards to the door, so she would not have to turn her back on her brother. In addition, Mariela knew about her brother's long history of angry outbursts toward their parents. She testified that appellant had also slapped her once, several years ago. Finally, the police officer who responded to Mariela's call testified that she was trembling and crying when he arrived at the house.

In sum, the substantial evidence showed that appellant was behaving so aggressively toward Mariela she believed she needed to leave their parents' house, without turning her back on appellant and while calling the police. When the police arrived, Mariela was still trembling and crying. A rational juror could conclude from this evidence that Mariela was actually and reasonably in sustained fear of appellant.

*Instructional Error*

Appellant contends the trial court erred when it failed to instruct the jury on attempt as a lesser included offense of the charged crime. According to appellant, the jury might have found that appellant attempted to place Mariela in actual, reasonable sustained fear of him, even though she did not experience that fear.

Attempt is a lesser included offense of criminal threats. (*In re Sylvester C.* (2006) 137 Cal.App.4th 601, 607.) A defendant may be guilty of an attempted criminal threat when he or she, acting with the requisite specific intent, makes a threat that would otherwise violate section 422 but that does not cause the victim to actually

5

and reasonably experience sustained fear. (*People v. Toledo* (2001) 26 Cal.4th 221, 230-231.) This could occur when, for example, the victim misunderstands a threat or when, "for whatever reason, the threat does not actually cause the threatened person to be in sustained fear . . . ." (*Id.* at p. 231.)

"Under California law, a lesser offense is necessarily included in a greater offense if either the statutory elements of the greater offense, or the facts actually alleged in the accusatory pleading, include all the elements of the lesser offense, such that the greater cannot be committed without also committing the lesser." (*People v. Birks* (1998) 19 Cal.4th 108, 117.) The trial court has a duty to instruct on a lesser included offense, "even absent a request, and even over the parties' objections, . . . if there is substantial evidence the defendant is guilty only of the lesser." (*Id.* at p. 118.)

Appellant would have been entitled to an instruction on attempt if there was substantial evidence that Mariela did not understand his statement to be a threat. But there was no substantial evidence to that effect. Mariela testified that she understood appellant's statement to be a threat. There was no evidence that she understood his statement in any other way. Similarly, there was substantial evidence that Mariela was afraid of appellant. She testified that she was afraid and that she left the house because she believed she would be safer outside. That Mariela also experienced emotions such as anger, frustration and sadness does not detract from the threatening nature of appellant's statement, the victim's understanding of it or the reasonableness of her reaction to it. The trial court did not err.

*Evidence of Appellant's Prior Conviction*

Appellant contends the trial court erred when it permitted Victoria Reynozo to testify concerning the threat appellant made against her in February 2010 and his misdemeanor conviction arising out of that incident. He contends evidence of the 2010 threat was unduly prejudicial because that threat was nearly identical to the threat he made against Mariela in 2011. Because the jury learned that first threat was a

6

crime, appellant contends, it was more likely to conclude the second threat was also a crime. There was no error.

Evidence of prior crimes is inadmissible to prove propensity or to prove conduct on a specific occasion. (Evid. Code, § 1101.) In a criminal action where the defendant is accused of "an offense involving domestic violence," however, evidence that the defendant committed other acts of domestic violence "is not made inadmissible by [Evidence Code] Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] Section 352." (Evid. Code, § 1109, subd. (a)(1).)

Evidence Code section 352 provides that evidence may be excluded "if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." A trial court's determination that evidence is not made inadmissible by Evidence Code section 352 will upheld on appeal unless the trial court " 'exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice.' " (*People v. Rodriguez* (1994) 8 Cal.4th 1060, 1124, quoting *People v. Jordan* (1986) 42 Cal.3d 308, 316.)

Evidence of a prior domestic violence and a conviction arising therefrom is admissible, and not unduly prejudicial under section 352, when offered to establish a crucial element of the charged offense. (*People v. Garrett* (1994) 30 Cal.App.4th 962, 966-968.) Here, the evidence that appellant had previously made a similar threat to Victoria Reynoza and he was convicted of a crime, was relevant to prove Mariela's actual and reasonable sustained fear therefrom. (*People v. Allen, supra,* 33 Cal.App.4th at p. 1156.)

Appellant contends the evidence of his prior conviction was unduly prejudicial because the jury was informed that when appellant previously threatened to cut someone's head off, he pleaded guilty to making a criminal threat. The jury was likely to conclude that threatening to cut off someone's head is a criminal threat, rather

than conclude that knowledge of appellant's prior threat placed Mariela in sustained fear after she was threatened herself.

The jury's actual verdict, however, belies appellant's contention. In this same trial, appellant was acquitted of making a criminal threat against Victoria even though he told her that she was going to die and he was going to make taquitos out of her body. Victoria testified that appellant's threat made her feel afraid, as well as annoyed. She was tired of being insulted by him. Rather than call the police, Victoria left the house and went to stay with a friend for several hours. Mariela, by contrast, testified that she was afraid when appellant threatened her. She began walking out of the house while he was still threatening her, and she called the police as she did so. Mariela was trembling and crying when the officer arrived. The jury convicted appellant of threatening Mariela, but not Victoria. It was clearly capable of distinguishing between appellant's threats, and of evaluating the evidence relating to the fear experienced by the targets of those threats. There was no abuse of discretion.

*Cumulative Error*

Appellant contends the cumulative effect of these errors warrants reversal of his conviction. We have, however, found no error or resulting prejudice. Accordingly, we reject the claim of cumulative error. (*People v. Tully* (2012) 54 Cal.4th 952, 1061.)

*Protective Order*

At sentencing, appellant was served with a "Criminal Protective Order -- Domestic Violence," issued pursuant to section 1203.097 and directing him to have no contact with his mother and sister. He contends the order must be stricken as an unauthorized sentence because section 1203.097 applies only where probation has been granted, and he was sentenced to prison. We agree.

Section 1203.097 by its own terms has no application where, as here, the defendant is sentenced to prison. It provides, "If a person is granted probation for a crime in which the victim is person defined in Section 6211 of the Family Code, the

8

terms of probation shall include" a criminal protective order protecting the victim from further contact with the probationer.  (§ 1203.097, subd. (a)(2).)  Mariela and Victoria are persons defined in Family Code section 6211, subdivision (f) because they are "related [to appellant] by consanguinity or affinity within the second degree."  (Fam. Code, § 6211, subd. (f).)  The statute does not, however, apply to appellant because he was not granted probation.

Respondent urges us to affirm the order as an exercise of the trial court's "inherent authority."  We cannot oblige.  The trial court relied on section 1203.097 to enter the restraining order, not on any understanding of its inherent authority.  As we held in *People v. Ponce* (2010) 173 Cal.App.4th 378, the protective order would amount to an unauthorized sentence even if the trial court had relied on its "inherent authority" to protect trial participants.  (*Id.* at p. 381-382.)  "An existing body of statutory law regulates restraining orders.  ' "[I]nherent powers should never be exercised in such a manner as to nullify existing legislation . . . ." ' (*People v. Municipal Court (Runyan)* (1978) 20 Cal.3d 523, 528.)  Where the Legislature authorizes a specific variety of available procedures, the courts should use them and should normally refrain from exercising their inherent powers to invent alternatives.  (*People v. Trippet* (1997) 56 Cal.App.4th 1532, 1550.)"  (*People v. Ponce, supra,* 173 Cal.App.4th  at p. 384.)

In addition to section 1203.097, the Legislature has authorized trial courts to issue restraining orders where "a criminal defendant has been convicted of a crime of domestic violence as defined in Section 13700 . . . ."  (§ 136.2, subd. (i).)  Section 136.2 also would not authorize a protective order in this case because appellant's offense was not "a crime of domestic violence as defined in Section 13700 . . . ."  Section 13700, subdivision (b) provides, " 'Domestic violence' means abuse committed against an adult, or a minor who is a spouse, former spouse, cohabitant, former cohabitant, or person with whom the suspect has had a child or is having or has had a dating or engagement relationship.  For purposes of this subdivision, 'cohabitant'

9

means two unrelated adult persons living together for a substantial period of time, resulting in some permanency of relationship." This definition is precise and it does not encompass the biological relationship between appellant, his mother and his sister. The trial court could not properly have relied on its "inherent authority" to expand the scope of section 136.2 to include this relationship. We are left with no alternative but to conclude the protective order was an unauthorized sentence.

### Conclusion

The protective order is stricken. In all other respects, the judgment is affirmed.

<u>NOT TO BE PUBLISHED.</u>


YEGAN, J.

We concur:


GILBERT, P.J.


PERREN, J.


10

Ryan Wright, Judge

Superior Court County of Ventura

_____


Mark R. Feeser, under appointment by the Court of Appeal, for Defendant and Appellant.


Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, , Deputy Attorney General, for Plaintiff and Respondent.